IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MAJID KHAN, *et al.*, <br>     *Petitioners*, <br> v. <br><br> GEORGE W. BUSH, et al., <br>     *Respondents*. | Civil Action No. 06-cv-1690 (RBW) |

**PETITIONERS' REPLY MEMORANDUM IN SUPPORT OF EXPEDITED MOTION FOR RECONSIDERATION OF THE COURT'S NOVEMBER 17, 2006 ORDER, OR IN THE ALTERNATIVE, RENEWED EXPEDITED MOTION FOR EMERGENCY ACCESS TO COUNSEL AND ENTRY OF AMENDED PROTECTIVE ORDER**

No stay has been entered in Petitioner Majid Khan's case. No motion to dismiss has been filed.[1] And despite the pending appeals addressing the constitutionality of the Detainee Treatment Act (DTA)[2] and Military Commission Act (MCA)[3], courts have continued to exercise jurisdiction over other habeas cases, including issuing orders governing petitioners' access to their lawyers.[4] Indeed, other petitioners at Guantánamo continue to meet with their attorneys, including other clients of the undersigned counsel. Moreover, Respondents have

---

[1] Cf. Taher v. Bush, Civil Action No. 06-1684 (GK) (D.D.C.), Motion to Dismiss (Nov. 6, 2006) (dkt. 5).
[2] Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 (10 U.S.C. §801 note).
[3] Military Commission Act of 2006, Pub. L. No. 109-366.
[4] See, e.g., Abdessalam v. Bush, Civil Action No. 06-1761 (ESH) (D.D.C.), Order (Dec. 22, 2006) (dkt. no. 11) (ordering access to counsel and entry of the Amended Protective Order in habeas petition filed on Oct. 16, 2006); Isamatullah v. Bush, Civil Action No. 06-1682 (RJL), minute order (Nov. 27, 2006) (ordering, in habeas petition on behalf of a Guantánamo detainee filed on September 29, 2006, that the respondents shall file "a statement showing why the writ of Habeas Corpus should not issue"); Mohammed, et al. v. Rumsfeld, Civil Action No. 06-1680 (RJL), Order (Nov. 27, 2006) (ordering, in habeas petition filed on September 29, 2006, on behalf of 25 detainees held in U.S. military custody at the U.S. Air Force Case, Bagram, Afghanistan, that respondents file "a statement showing why the Writ of Habeas Corpus should not issue"); Hamdullah v. Bush, Civil Action No. 06-1691 (GK), Order (Oct. 16, 2006) (ordering, in habeas petition filed on September 29, 2006, on behalf of a Guantánamo detainee, that the "Respondents show cause by November 6, 2006 why the Petition should not be granted"); Taher v. Bush, Civil Action No. 06-1684 (GK), Order (Oct. 16, 2006) (ordering, in habeas petition filed on September 29, 2006, on behalf of a Guantánamo detainee, that the "Respondents shall show cause by November 6, 2006 why the Petition should not be granted"); Moosa v. Bush, Civil Action No. 06-1686 (CKK), Order (Oct. 4, 2006) (ordering, in habeas petition filed on September 29, 2006, on behalf of a Guantánamo detainee, that the Amended Protective Order is entered and that the respondents shall file a factual return, and staying the remaining issues pending the resolution of Al Odah and Boumediene).

publicly admitted imprisoning Khan in secret C.I.A. detention and subjecting him to the euphemistically-named "alternative interrogation techniques" prior to his transfer to Guantánamo on September 6, 2006. Each day that passes increases the risk that Khan will have difficulty assisting in his challenge to his detention because of the ongoing impact of the trauma from his interrogation, isolation and secret detention. Yet, Khan continues to be denied access to his pro bono counsel.

Khan now respectfully submits this Reply Memorandum in support of his Expedited Motion for Reconsideration of the Court's November 17, 2006 Order, or In the Alternative, Renewed Motion for Emergency Access to Counsel and Entry of the Amended Protective Order. In this Court's Order of November 17, 2006, the Court erred when it determined that it did not have existing jurisdiction over this petition pending the outcome of the appeals in Boumediene v. Bush, No. 05-5062 (D.C. Cir.), and Al Odah v. United States, No. 05-5064 (D.C. Cir.). In addition, the relief Petitioner seeks is not merely an evaluation by Respondents of his mental and physical health. Rather, Petitioner seeks relief that will minimize any harm done to his ability to direct his litigation and vindicate his legal rights, namely, prompt access to his attorney. Respondents, however, continue to claim that this Court lacks the authority to act, misconstrue both the relevant facts and Khan's arguments, and misrepresent the provisions of the Amended Protective Order. These arguments and misrepresentations should be rejected.

The Court exercises jurisdiction over this pending habeas petition, and Khan requires immediate access to counsel to direct his litigation and, at a minimum, to assist his counsel in defending the Court's jurisdiction over his case. Accordingly, this Court should order Respondents to afford Khan prompt access to counsel pursuant to the Amended Protective Order.

I.  **THIS COURT HAS JURISDICTION OVER THE PETITION AND SUBSTANTIAL DOUBT IS RAISED BY THE APPLICATION OF THE DTA AND MCA TO KHAN, A LONG-TERM RESIDENT AND ASYLUM HOLDER IN THE UNITED STATES**

When a habeas petition is properly filed, the court has authority to determine its own jurisdiction.  See United States v. United Mine Workers of America, 330 U.S. 258 (1947); Marshall v. International Brotherhood of Teamsters, 593 F.2d 1297, 1301 n.16 (D.C. Cir. 1979).  Here, the Court continues to exercise jurisdiction over Khan's petition.  Unlike the petitioners in the cases pending before the United States Court of Appeals for the District of Columbia in Al Odah and Boumediene, Khan was an asylum holder and long-term resident of the United States with strong, voluntary ties to this country.  As a result, Khan enjoys the implied protections of constitutional habeas historically afforded to resident aliens[5] and his case presents factual and legal issues distinct from those in the pending appeal.[6]

Moreover, this Court still remains Khan's only available venue to seek review of his detention.  Respondents emphasize in great detail the Combatant Status Review Tribunals ("CSRTs") for other Guantánamo detainees.  But notably absent from the Declaration of Karen L. Hecker (dkt. no. 15-2) and any other submission by Respondents are time constraints for

---

[5] See, e.g., The Japanese Immigrant Case, 189 U.S. 86, 101 (1903) (court considered alien "a part of [the country's] population" because of his residence in the United States); Yick Wo v. Hopkins, 118 U.S. 356 (1886) (petitioner was a legal resident of the United States for twenty years); U.S. v. Villato, 2 U.S. 370, 28 F. Cas. 377, 1 L. Ed. 419 (No. 16,622) (Pa. 1797) (Spanish-born petitioner attempted to become citizen prior to even precipitating his imprisonment).

[6] The Respondents cite the recent district court decision in Hamdan v. Rumsfeld, Civil Action No. 04-1519 (JR) (D.D.C.) (Dec. 13, 2006) (dkt. no. 86), but that case is distinguishable from the present habeas petition.  As an initial matter, that decision is not binding on this Court.  Judge Robertson's constitutional analysis is also flawed and distinguishable in several respects.  Judge Robertson suggested (at p. 19) that Eisentrager v. Johnson, 339 U.S. 763 (1950), controls habeas cases involving Guantánamo detainees.  Unlike the petitioners in Eisentrager, however, Khan has not been charged with or lawfully convicted with any war crime, he is neither an admitted nor convicted "enemy alien," and he has resided in the United States for many years — all factors that the Supreme Court in Rasul v. Bush recognized as distinguishing Eisentrager's constitutional holding.  See 542 U.S. 466, 475-76 (2004).  Petitioner, instead, is a citizen of Pakistan, a U.S. ally.  He is a long-term resident of the United States with strong, voluntary ties to this country.  Such individuals hold "implied protections" under the Constitution.  See supra note 5.  Judge Robertson ALSO found that generally Guantánamo is not subject to the "'implied protection' that accompanies presence on American soil," (at p. 21), a view that Justice Kennedy expressly rejected in Rasul.  See 542 U.S. at 487 (Kennedy, J., concurring) ("Guantánamo Bay is in every practical respect a United States territory" that is subject to the implied protection of the United States).  For these reasons, Judge Robertson's decision cannot be relied upon by this Court as a basis for declining to exercise its jurisdiction.

3

providing Khan with a CSRT.  If Respondents' past conduct is any indicator, new CSRTs will face ongoing delays.  Respondents originally announced that a CSRT for Khan would be conducted by November or December 2006.[7]  More recently, they have stated no CSRT will occur for Khan until early 2007.[8]  The timing of any proceedings against Khan is thus utterly arbitrary.  In addition, because Respondent Bush has determined Khan is subject to a military commission, Khan will not even have the minimal consideration of an Annual Review Board to determine whether he is eligible for release[9]  Respondents' discussions of generalized CSRT information related to other Guantánamo is irrelevant.

If any question exists as to judicial authority to consider the merits of Khan's challenge to his detention, the individualized facts present in this case necessitate that the Court establish a briefing schedule to address the issue.  In determining its jurisdiction, the Court should, indeed must, permit Khan to consult with his counsel.  Khan has a right to direct his litigation.  He may also know additional facts relevant to the defense of this Court's jurisdiction over his case and has a right to provide his existing counsel with such information at this time.[10]

Finally, Khan has well-founded concerns that the Respondents will continue their history of seeking to evade judicial review.  Since the inception of the habeas litigation challenging the detention of individuals imprisoned as enemy combatant at Guantánamo and at the Charleston Naval Weapons Station in South Carolina, Respondents have engaged in a concerted effort to avoid judicial scrutiny of the abuse of Executive power.  For example, upon

---

[7] Michael Melia, "U.S. Rehearses for Terror Hearings," Assoc. Press, Dec. 18, 2006 (noting that military officials said in September that hearings for the 14 new detainees would be held within three months, but recently announced that the timeframe has been pushed back to early 2007).
[8] Id.
[9] See Revised Implementation of Administrative Review Procedures for Enemy Combatants at U.S. Naval Base Guantanamo Bay at (2) (July 14, 2006), available at http://www.defenselink.mil/news/Aug2006/d20060809 ARBProceduresMemo.pdf.
[10] For example, if Khan was detained at any point in sovereign U.S. territory on a U.S. Naval vessel, he would have been deemed within the territory of the United States.  As explained in United States v. Rogers, 50 U.S. 249, 260 (1893), vessels "are deemed to be within the territory of the country of their owners. Constructively, they constitute part of the territory of the nation to which the owners belong."  Such a factual situation, which would be known to Khan but not to counsel at this stage, would give rise to new jurisdictional claims.

4

remand of the habeas petition on behalf of Yasser Hamdi to the district court, the government reached an agreement to release Mr. Hamdi to freedom in Saudi Arabia, and thus avoided defending his detention and interrogations in open court.[11] Similarly, the Court of Appeals for the Fourth Circuit criticized the government for seeking to moot Jose Padilla's habeas petition in 2005 by transferring Mr. Padilla to the custody of federal law enforcement and criminally charging him for conduct unrelated to the alleged basis for his detention as an "enemy combatant."[12] Again, the Executive successfully avoided judicial review of its actions with respect to Mr. Padilla's detention as an "enemy combatant." More recently, the government transferred a group of "non-enemy combatant" prisoners from Guantánamo to a refugee center in Albania on a Friday afternoon, and then sought to moot an appeal that was scheduled for oral argument before the Court of Appeals for the District of Columbia the following Monday morning.[13] The presumption of good faith usually afforded to the government as a defendant has no place in litigation challenging the detention of enemy combatants in Guantánamo.

Accordingly, this Court should exercise its jurisdiction to order Khan's prompt access to counsel pursuant to the Amended Protective Order.

II. **CONRETE AND PARTICULARIZED CONCERNS EXISTS REGARDING THE GRAVE URGENCY OF ACCESS TO COUNSEL FOR KHAN**

Respondents mischaracterize and minimize the concerns regarding Khan's mental health and the reasons underlying his need for immediate access to counsel. First, Respondents assert that any concerns about the impact upon Khan of his secret detention and the "alternative interrogation methods" are speculative and that Khan has "no basis to draw any connection between the alleged mental health condition of Padilla with that of Khan." Rep'ts Opp'n at 9

---

[11] Jerry Markon, "U.S. To Free Hamdi, Send Him Home," Wash. Post, Sept. 23, 2004, at A1.
[12] Padilla v. Hanft, Order, at 3, No. 05-6396 (4th Cir., Dec. 21, 2005) (noting, in denying Padilla's transfer to DOJ custody, that the government's actions "suggested that the Justice Department request was made to avoid further judicial scrutiny" and that prosecutors had left "an appearance that the government may be attempting to avoid consideration of [the Fourth Circuit's] decision by the Supreme Court.").
[13] See Qasim v. Bush, Order, 05-497 (D.C. Cir., Aug. 14, 2006).

5

n.4.  Second, Respondents describe Khan's concerns as relating to a conditions of confinement claim.  Id. at 9.  Khan has been quite clear, however, that the concerns about the lasting effects of his secret detention and the "alternative interrogation" techniques relate directly to his ability to assist in his own defense and direct his litigation.

Additionally, far from being speculative, Khan's concerns are concrete and particularized, as explained below and in prior filings.  They are also substantially reinforced by the issues the court is currently addressing in Mr. Padilla's criminal trial.  Mr. Padilla is the first and only individual detained as an "enemy combatant" by the United States who has received an independent psychiatric evaluation.  Most recently, the court ordered a competency evaluation[14] to assess the impact of Mr. Padilla's prolonged isolation, sensory deprivation/overstimulation, sleep deprivation and other forms of aggressive interrogation techniques.  Although the Respondents deemed Mr. Padilla's allegations "vague and outlandish," Resp'ts Opp'n at 9 n. 4, the court in that case found the concerns about Mr. Padilla's ability to assist his counsel serious enough that it ordered a competency evaluation.

Despite Respondents' efforts to distance Khan from the outrageous government conduct inflicted upon Jose Padilla, the issues the court is addressing in Mr. Padilla's case arise out conditions of confinement and interrogation techniques that are similar to those that the Respondents' admit to using against Khan or that have been reported publicly as applied in secret C.I.A. detention.  According to Mr. Padilla's unchallenged factual allegations, he was imprisoned in isolation for prolonged periods of time, denied access to fresh air or light, subjected to 24-hour lighting, sleep disruption/deprivation and stress positions.[15]  The declarations and interviews of those imprisoned with Khan and statements from other individuals released from secret C.I.A. detention describe prisoners enduring prolonged,

---

[14] United States v. Padilla, Case no. 04-cr-60001, Order (S.D. Fl.) (Dec. 19, 2006) (dkt. 730).
[15] United States v. Hassoun, et al., Crim. Action No. 04-60001 Def's Mot. to Dismiss for Outrageous Gov't Conduct.

isolation, light and sound deprivation, stress positions, 24-lighting, temporal disorientation, and sleep deprivation. [16]

Khan has presented concrete concerns justifying his immediate need to consult with his counsel. Accordingly, the Court should grant Khan prompt access to counsel pursuant to the Amended Protective Order.

### III. AN INDEPENDENT, CULTURALLY-APPROPRIATE MENTAL AND PHYSICAL EVALUATION OF KHAN IS WARRANTED

In the face of Khan's substantial concerns regarding the impact of his torture and abuse, Respondents offer only generalized discussion of their claims that military personnel have provided sufficient medical care to prisoners. Moreover, in their discussion of medical treatment at Guantánamo, Respondents fail to submit a single piece of information directly related to Khan's past or current condition and treatment, if any. According to the Declaration of Captain Ronald L. Sollock, M.D., Ph.D., at ¶ 4, no mental health evaluation of Khan has even been conducted upon his arrival at Guantánamo. Any medical evaluation has been limited to his physical health.

Respondents also now take the extreme position that Khan not only cannot meet with his counsel, but that he cannot even be seen by independent medical providers for fear that he might disclose to them the methods of interrogation inflicted upon him by U.S. personnel or other TOP SECRET//SCI information that may have "come into his possession." The notion that an evaluation of Khan by independent medical providers would raise concerns about national security is absurd. Such medical providers would be covered under the same confidentiality restrictions as habeas counsel. As Khan set forth previously in detail, the Amended Protected Order expressly governs habeas counsel access to TOP SECRET//SCI information and explicitly covers attorneys as well as interpreters, translators, paralegals,

---

[16] See, e.g., Petrs' Reply in Support of Expedited Mot. at 14-17.

7

investigators and all other personnel or support staff employed or engaged to assist in the litigation."[17]  And should the Court order and oversee a medical evaluation directly, it could require a medical provider to abide by the provisions of the Amended Protective Order.  It is difficult to imagine how national security concerns could legitimately preclude access to an independent mental and physical health evaluation.

Further, despite the generalized declarations submitted by Respondents making claims that personnel at Guantánamo provide adequate medical care, documented instances of medical mistreatment and concerns about the medical care at Guantánamo require that this Court investigation more fully Khan's mental and physical health as it relates to his ability to assist his counsel.  Judge Kesseler, for example, stated during oral argument in Balwazir v. Bush, Civil Action No. 05-280 (GK), that allegations of the Respondents' misuse of an emergency restraint chair to force-feed a hunger-striking prisoner was "extremely disturbing."[18]  The petitioner alleged that during the force-feeding sessions, he was overfed and over hydrated, which caused painful stomach cramps.  Medical personnel then left him restrained for long periods of time after the overfeeding caused him to defecate and urinate on himself.  In that case, Judge Kessler also questioned the veracity of the declaration by the detention operations Commander and the Navy Captain who ran the detainee medical facility.  Both declarations had asserted that the use of the emergency restraint chair was humane:

> Kessler noted with irritation that Hood and Hooker made largely general claims about the group of detainees on the hunger strike in defending the switch to the new force-feeding procedures used on Bawazir.

---

[17] Amended Protective Order, ¶ 12.
[18] Josh White and Carol D. Leonnig, "U.S. Cites Exception in Torture Ban," Wash. Post, Mar. 3, 2006, at A04 ("'These allegations . . . describe disgusting treatment, that if proven, is treatment that is cruel, profoundly disturbing and violative of' U.S. and foreign treaties banning torture, Kessler told the government's lawyers.").

8

> "I know it's a sad day when a federal judge has to ask a DOJ attorney this, but I'm asking you -- why should I believe them?" Kessler asked [the Justice Department Attorney].[19]

Respondents' claims of humane medical treatment at Guantánamo have been oft challenged by petitioners, but as of yet Jose Padilla remains the only person once held as an enemy combatant by the United States who has been subject to any court-ordered independent medical evaluation, albeit within the context of his present criminal trial. Similar to Mr. Padilla, Khan seeks an appropriate medical evaluation to determine if the lasting effects of his secret detention and the "alternative interrogation methods" have compromised his ability to assist in his litigation. In the alternative, Respondents' should comply with this Court's suggestion and submit a thorough report about Khan's mental and physical health to the Court and counsel.

IV. **KHAN HAS SATISFIED RULE 54(B) OR, ALTERNATIVELY, THE COURT CAN DECIDE THE RENEWED EXPEDITED MOTION FOR EMERGENCY COUNSEL ACCESS**

Respondents spend much of their brief addressing the Rule 54(b) standard. Petitioner not only meets the standard under Rule 54(b), but because this court originally dismissed the motion for counsel access without prejudice, Khan raises in the alternative a renewed expedited motion for counsel access. First, Rule 54 (b) is satisfied in light of the manifest injustice that would occur without Khan's access to counsel and further delay of his access to legal representation. Second, as Khan set forth in his prior motion, the Court erred in finding that it had no existing jurisdiction. As Judge Kessler recently stated in an order granting access to counsel for a Guantánamo prisoner: "It is often said that 'justice delayed is justice denied.' Nothing could be closer to the truth with reference to the Guantanamo Bay cases." Al Razak v. Bush, Order, Civil Action No. 05-1601 (GK) (Dec. 1, 2006, D.D.C.) (dkt. 41).

---

[19] Id.

9

Whether this Court's reconsiders its November 17, 2006 Order or considers Khan's renewed motion, Khan has shown that the Court has the existing authority to order his access to counsel and that the need for this access is urgent.

## CONCLUSION

Accordingly, for the reasons stated above and set forth in Petitioner Khan's prior filings, this Court should order Respondents to promptly afford him access to counsel pursuant to the Amended Protective Order.

Dated:  January 11, 2007

          Respectfully submitted,

          Counsel for Petitioners:

            /s/  _____

          Gitanjali S. Gutierrez

          Michael Ratner
          William Goodman
          CENTER FOR CONSTITUTIONAL RIGHTS
          666 Broadway
          New York, New York 10012
          (212) 614-6485