IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MAJID KHAN**, *et al.*,<br>*Petitioners,* | )<br>)<br>)<br>) |  |
| v. | )<br>)<br>) | **Civil Action No. 06-cv-1690 (RBW)** |
| **GEORGE W. BUSH**, *et al.*,<br>*Respondents.* | )<br>)<br>)<br>)<br>) |  |

**PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO DISMISS, OR
ALTERNATIVELY, MOTION FOR A STAY-AND-ABEY ORDER, AND NOTICE OF
INTENT TO FILE PETITION UNDER THE DETAINEE TREATMENT ACT**

**INTRODUCTION**

Petitioner Majid Khan, a long term legal resident with substantial presence and property in the United States, through his undersigned counsel, respectfully requests that in response to Respondents' April 19, 2007 Motion to Dismiss ("Motion to Dismiss") [dkt. no. 19], this Court (i) deny Respondents' Motion to Dismiss his habeas action and, instead, issue an Order to Show Cause to proceed to the merits of Petitioner Khan's challenge to his detention or, alternatively, (ii) hold this action in abeyance pending Petitioner Khan's exhaustion of his remedies in the Court of Appeals under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat. 2680 (2005) ("DTA"), and the filing in the United States Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) (*"Boumediene I"*), or the Supreme Court's resolution of the same jurisdictional issue as presented in a pending original habeas corpus petition filed in *In re Ali*, No. 06-1194, which challenges the Court of Appeals holding with respect to the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (2006) ("MCA").

Respondents argue that Petitioner Khan is now similarly situated as other Guantánamo detainees challenging the legality of their detention, Motion to Dismiss at 3-4 & n.4, and that the Court of Appeals' holding in *Boumediene I* governs the jurisdictional question in his case and dictates the conclusion that Petitioner Khan holds no rights under the Constitution. Respondents claims must be rejected. Petitioner Khan is a long-term, legal resident of the United States who continues to have substantial voluntary ties to this country. A noncitizen, like Petitioner, who has established legal residence in the United States and enjoys such substantial voluntary holds a constitutional right to habeas relief under the Suspension Clause. Thus, the MCA's removal of jurisdiction over his habeas petition is an unconstitutional violation of the Suspension Clause, and the decision in *Boumediene I*, which involved noncitizens without presence or property in the United States, is inapplicable here. *Boumediene I*, 476 F.3d at 991 ("Precedent in this court and the Supreme Court holds that the Constitution does not confer rights on aliens without property or presence within the United States."). Respondents' Motion to Dismiss should be denied and this Court should issue an Order to Show Cause to begin consideration of the merits of Petitioner Khan's challenge to his detention.

Alternatively, even if this Court finds that *Boumediene I* is applicable here despite Petitioner Khan's substantial voluntary ties to the United States, controlling Circuit and Supreme Court authority require the Court to stay and hold in abeyance Petitioner Khan's District Court proceeding pending his exhaustion of remedies under Section 1005(e) of the DTA. This Court maintains subject-matter jurisdiction over this habeas corpus petition under the Supreme Court case upon which the government's Motion is primarily based, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998), which holds that dismissal for lack of subject-matter jurisdiction is proper only when the federal claim is frivolous or foreclosed by prior decisions of the Supreme Court. The Circuit Court's split decision in *Boumediene I*, and the split commentary from Supreme Court Justices on the denial

of certiorari in that case, *Boumediene v. Bush*, 127 S. Ct. 1478 (2007) (*"Boumediene II"*), establish that the issues involved are substantial and that the Supreme Court has *not* decided the important questions that were deferred pending exhaustion of available remedies.

The Supreme Court, however, has provided a clear road map for the litigation involving Guantánamo detainees, like Petitioner Khan, who filed habeas corpus petitions under *Rasul v. Bush*, 542 U.S. 466 (2004). While available remedies are exhausted, the District Court has authority to enter a stay-and-abey order to safeguard habeas rights during the period of exhaustion, and such an order is mandatory in the absence of frivolous claims and intentional delay. *Rhines v. Weber*, 544 U.S. 269, 274 (2005).

Permitting Petitioner Khan to present his post-exhaustion facts and claims to this Court is logical, fair, and compelled by governing Supreme Court authority. He has made substantial arguments that his particular claims are viable and that, if necessary, he should be able to make a record for potential appellate and Supreme Court review. Accordingly, should this Court find *Boumediene I* applicable here, the motion to dismiss should be denied.

## ARGUMENT

I.  **PETITIONER KHAN HAS A CONSTITUTIONAL RIGHT TO HABEAS RELIEF AS A LONG-TERM RESIDENT OF THE UNITED STATES WITH PRESENCE AND PROPERTY IN THIS COUNTRY.**

As an individual with an ongoing presence and property in this country, Petitioner Majid Khan holds a constitutional right to habeas relief.[1] Petitioner Khan is a twenty-seven-year-old resident of the United States and citizen of a U.S. ally, Pakistan. Petition for Writ of Habeas Corpus,

---

[1] Although Petitioner Khan bears the burden of establishing this Court's jurisdiction over his habeas petition, when considering Respondents' Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, this Court must accept as true all the factual allegations contained in the habeas petition. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Sierra Club v. Leavitt*, 355 F. Supp. 2d 544, 546 (D.D.C. 2005).

filed Sept. 29, 2006, at ¶ 10 ("Petition") [dkt. no. 1]. In 1996, when Petitioner Khan was sixteen-years-old, he moved to the United States from Pakistan with his mother and siblings to join his father and brothers already living in this country. *Id*. at ¶20. On July 14, 1998, the United States granted Petitioner Khan asylum status and after graduating from high school in a Baltimore suburb, he applied for Permanent Resident Status in the United States in July 1999. *Id*. Petitioner Khan formerly worked for the State of Maryland and was employed by the Maryland company Electronic Data Systems Technology & Engineering (EDS) beginning in March 2001. *Id*. at 25. While still employed at EDS, Majid traveled to Pakistan to get married in the beginning of 2002. *Id*. at ¶26. He returned to the United States to continue working and to provide financial support to his wife. *Id*. During his second visit to Pakistan to see his wife, he was kidnapped by Pakistani authorities while staying with his brother in Karachi.[2] *Id*. at ¶28. Petitioner Khan's family, including his father, three sisters and older brother, continued to reside in their joint household in the United States and wait anxiously for news of his whereabouts and conditions. *Id*. at ¶ 31. Petitioner Khan continues to maintain strong connections to his residence as well as his financial, material and professional ties within the United States.

Petitioner Khan is in no manner similarly-situated to other Guantánamo detainees who are noncitizens with no connections to this country. Regardless of the determination of the rights held by other Guantánamo detainees, Petitioner Khan holds a constitutional right to habeas relief because his long-term residence and ongoing substantial voluntary ties with this country place him in the category of noncitizens who have been vested with constitutional rights. Petitioner Khan resided lawfully in the United States for many years, still has his only residence in this country and holds his property in the United States. As a result, he has crossed the threshold the Supreme Court articulated

---

[2] Petitioner Khan was staying with his brother because he did not have a residence in Pakistan. His only residence was, and continues to be, his family's home in a Baltimore suburb.

in *United States v. Verdugo-Urquidez*: "[O]nce [a noncitizen] lawfully enters and resides in this *country* he becomes invested with the rights guaranteed by the Constitution to all people within our borders." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (citation omitted); *Johnson v. Eisentrager*, 339 U.S. 763, 770-71 (1950) (" [A]t least since 1886, we have extended to the person and property of resident [noncitizens] important constitutional guarantees – such as the due process of law of the Fourteenth Amendment."); *see also Zadvydas v. Davis*, 533 U.S. 678, 692 (2001) (recognizing that the indefinite detention of allegedly dangerous noncitizens without adequate procedural safeguards would raise serious constitutional questions). Prior decisions holding that the Guantánamo detainees lack legal rights are, by their own reasoning, inapplicable here. *See, e.g.*, *Boumediene I*, 476 F.3d at 992 ("The law of this circuit is that a 'foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise'.") (citing *People's Mojahedin Org. of Iran v. U.S. Dep't of State*, 182 F.3d 17, 22 (D.C. Cir. 1999). Accordingly, this Court should recognize that Petitioner Khan holds a constitutional right to habeas that cannot be lawfully abrogated by the MCA, and should begin the merits proceedings in this action.[3]

II.   **THIS COURT MAINTAINS JURISDICTION TO ENTER A STAY AND ABEY ORDER PENDING PETITIONER KHAN'S EXHAUSTION OF HIS REMEDIES UNDER THE DETAINEE TREATMENT ACT.**

---

[3] Alternatively, and prior to any dismissal of his case, this Court should seek further briefing from the parties and hold a hearing on the impact of Petitioner Khan's legal residence in the United States upon his legal rights.

A.   **This Court Retains Subject-Matter Jurisdiction over this Habeas Corpus Petition Because Petitioner Khan's Claims Are Not Frivolous and Have Not Been Decided on the Merits by the Supreme Court.**

The government places primary reliance on *Steel Co.* for the unremarkable proposition that jurisdiction is a threshold question. Motion to Dismiss at 4.  The government ignores the preceding language in *Steel Co.*, language that supports this Court's jurisdiction to maintain the habeas action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court. *Steel Co.*, 523 U.S. at 89.

The starting point of *Steel Co.* is that a District Court has subject matter jurisdiction as long as there is a non-frivolous argument that the laws and Constitution support the claim:

> [T]he district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.' . . . unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'

523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)).  As demonstrated by the dissenting opinions in the Court of Appeals and on the denial of certiorari in *Boumediene II*, there is substantial support for a reading of the Constitution and laws of the United States that would sustain the instant habeas corpus petition. *See* 476 F.3d at 994-1012 (Rogers, J., dissenting); 127 S. Ct. at 1479-81 (Breyer, Souter & Ginsburg, JJ., dissenting from denial of certiorari).

The *Steel Co.* opinion also establishes that a Court of Appeals opinion, such as *Boumediene I*, is not sufficient to deprive the Court of subject-matter jurisdiction.  Only when the Supreme Court rules adversely on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co.*,

523 U.S. at 89 (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)) (emphasis added). The *Boumediene II* denial of certiorari is emphatically not a ruling on the merits. *See Boumediene II*, 127 S. Ct. at 1479 (Stevens & Kennedy, JJ., statement regarding denial of certiorari).

The jurisdictional issues are obviously not frivolous because the courts have been split on the legal and constitutional issues at each level of the Guantánamo detainee habeas litigation: the District Courts split, leading to the two-to-one *Boumediene I* opinion, resulting in the three-way fracture in the *Boumediene II* denial of certiorari. Seldom has this country faced weightier issues about the meaning of our Constitution and the fundamental right to the writ of habeas corpus. The primary case upon which the government relies establishes that the motion to dismiss should be denied while remedies are exhausted.

Moreover, this Court retains the power to decide its own jurisdiction in the first instance. *Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2155; *United States v. Ruiz*, 536 U.S. 622, 628 (2002). While the efficacy of the DTA remedies are determined, it is premature for this Court to determine the dispositive questions. Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*; then, if the case is not mooted by the DTA proceedings, it should provide the petitioner the opportunity to make his record, to present his claims, and to receive a decision based on the facts and law of his individual case.

The government's position is based on a fundamental misunderstanding of what it means for a court to have jurisdiction. "Jurisdiction is a word of many, too many, meanings." *Steel Co.*, 523 U.S. at 90 (quoting *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C. Cir. 1996)). While the *Boumediene I* opinion states the current law of the Circuit, the ruling does nothing to impair

Petitioner's rights to exhaust his remedies while this Court preserves the status quo.[4] If necessary, after exhaustion, this Court, the Circuit Court, and the Supreme Court have jurisdiction to determine the substantial issues raised by the petitioner without prejudgment based on a Circuit Court ruling that does not address Petitioner Khan's specific factual and legal claims.

**B.    The *Boumediene* Case Establishes That the Present Case Involves Substantial Issues That Have Not Been Decided by the Supreme Court and That the Exhaustion of Available Remedies Should Precede a Decision on the Merits.**

The government attempts to stretch the Circuit Court's *Boumediene I* decision far beyond its reach. Despite the initial jurisdiction found in *Rasul*, a split panel of this Court found that post-*Rasul* statutes deprived the courts of jurisdiction over petitions involving aliens detained at Guantánamo. *Boumediene I,* 476 F.3d at 994.  Only because the petitioners in those cases had declined to seek review directly with the Court of Appeals under § 1005(e) of the Detainee Treatment Act of 2005, the Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Id*. The petitioners filed for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a two-Justice statement respecting the denial of certiorari.  *Boumediene* II, 127 S. Ct. at 1478.

The statement of Justices Stevens and Kennedy found that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time." 127 S Ct. at 1479. The

---

[4] The government erroneously cites to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C. Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the power to stay and hold in abeyance.  In fact, the majority ruled in *Ayuda* that a stay was appropriate.  The government cited a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the court lacked power to enter a stay.  *See Ayuda*, 919 F.2d at 153.  The other concurring and dissenting opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155-56 (Wald, C.J., concurring and dissenting).

Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)).

The government's reliance on *Boumediene I* is misplaced for several reasons. First, the Circuit Court's reference to the *Boumediene I* petitioners' decision not to exhaust, coupled with Justices Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk*, 321 U.S. 114 (1944), in *Boumediene II*, support continuing the stay while the DTA remedy is exhausted. Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene II*, 127 S. Ct. at 1479 (Stevens & Kennedy, JJ., statement regarding denial of certiorari) (citing *Rasul*, 542 U.S. at 480-81). Third, Justices Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas corpus case in which the petitioner can present such arguments to the District Court and, if necessary, the Circuit Court and Supreme Court.

### 1. Justices Stevens and Kennedy Explicitly (and the Circuit Court Implicitly) Adopted the Exhaustion of Remedies Model for Habeas Relief.

*Boumediene I* does not control this case because, unlike the petitioners in that case, Petitioner here intends to exhaust his remedies under the DTA. The Circuit Court opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene I*, 476 F.3d at 994. Justices Stevens and Kennedy explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this time" in light of the Court's

practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*. *Boumediene II*, 127 S. Ct. at 1479.

The citation to *Hawk* is telling. In that case, the petitioner filed for federal habeas corpus relief under circumstances, as in the present case, in which the effectiveness of other remedies had not been established. The Supreme Court not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his contentions, and this Court has either reviewed or declined to review the state court's decision, a federal court will not ordinarily reexamine upon writ of habeas corpus the questions thus adjudicated . . . . But where resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raised, either because the state affords no remedy . . . or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate . . . , a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted). The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court. The ultimate issues would then be preserved for appellate and Supreme Court review, if necessary.

  **2.  The Supreme Court Has Not Decided Any Questions Regarding the Jurisdiction of This Court or the Rights That Can Be Enforced Through Habeas Corpus Proceedings.**

The government's claims regarding *Boumediene II* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." 127 S. Ct. at 1479. Three dissenting Justices and Circuit Judge Rogers in dissent explained that the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing habeas corpus petitions are profound and of obvious importance. *Boumediene I*, 476 F.3d at 994-1012; *Boumediene II*, 127

S. Ct. at 1479-81. The addition of Justices Stevens and Kennedy's statement confirms that the instant petition should be fully considered after exhaustion, and then in light of the specific claims for relief Petitioner Khan asserts based upon his unique facts in the DTA proceedings, and whether those proceedings prove capable of providing the relief he claims on his facts. The *Boumediene* case does not finally resolve the jurisdictional questions in this case.[5]

> 3. **The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved until the Adequacy of the DTA Remedy Becomes Known**

Questions regarding the suspension and elimination of the writ of habeas corpus require consideration of whether alternative remedies provide protection coextensive with the Great Writ. *Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus."). The *Boumediene* statement on certiorari clearly sets out, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy is "inadequate," the Court is prepared to address the merits of the habeas corpus claims. *Boumediene*, 127 S. Ct. at 1479 (statement of Stevens and Kennedy, JJ.). Further, Justices Stevens and Kennedy stated that, in the interim, the government should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id*. By maintaining the present case in the District Court, this Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Id*. In sum, the exhaustion model from the *Boumediene* litigation requires that this District Court proceeding remain in place for potential post-exhaustion litigation.

---

[5] The *Boumediene I* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing.

C.  **Because Petitioner Khan Is Exhausting Available Remedies, The District Court Not Only Has Discretion to Enter a Stay-and-Abey Order, But Such An Order Is Mandatory Under *Rhines***

Given the need to exhaust remedies under the DTA, the District Court proceedings should continue to be stayed and held in abeyance pending completion of Petitioner Khan's DTA review. In *Rhines*, the Supreme Court explicitly approved the stay-and-abey procedure in the closely analogous context of federal habeas corpus proceedings. 544 U.S. at 278. In *Rhines*, the prisoner filed a mixed habeas petition in federal court, which contained both claims exhausted through the state court system and unexhausted claims. Given the major procedural risks entailed by a dismissal order, the Court found that District Courts have discretion to enter stay-and-abey orders in the federal habeas case while the unexhausted claims are presented to the state court. The federal habeas corpus case is stayed and held in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions for, in effect, mandatory stay-and-abey. "[I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss" if the petitioner demonstrated (1) good cause for the failure to exhaust, (2) potentially meritorious unexhausted claims, and (3) no intentionally dilatory tactics by the petitioner. *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).[6] The petition here easily meets all three conditions for entry of a mandatory stay-and-abey order.

There is good cause for the failure to exhaust until now: the potential remedy under the DTA did not on its face appear to provide the relief available under common-law or statutory habeas. In *Pace*, the Court noted that potential confusion regarding state remedies required equitable protections. 544 U.S. at 416. Guantánamo detainees face complexities that are similar and worse.

---

[6] In *Rhines*, three Justices concurred, stating that stay-and-abey is required *in the absence of proof of* "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring, joined by Justices Ginsburg and Breyer).

The questions left open by the Supreme Court's decision in *Rasul*, and the subsequent DTA and MCA, have resulted in major complications. The claims raised by the instant petition are substantial and meritorious, and Petitioner Khan has not engaged in dilatory tactics.[7] In the event the case is remanded, or if the procedures for review set forth in § 1005(e) of the DTA prove an inadequate substitute for constitutionally-required habeas corpus procedures, this Court should be in position to proceed immediately on the habeas petition.

The government's attempt to distinguish *Rhines* fails because the government attempts to interpret *Rhines* to mean less than it actually says. The government contends that the power of the district court to stay-and-abey under *Rhines* is limited only to those instances when failing to stay-and-abey would cause a statute of limitations to run that would preclude the petitioner from refiling. Motion to Dismiss at 6-7. This was the factual predicate in *Rhines*, not its holding. Nothing in *Rhines* limited the District Court's equitable power to stay-and-abey only to concerns regarding statutes of limitation. Rather, *Rhines* held that the equitable powers the District Court possessed before enactment of the statute of limitations continued to exist and were not extinguished by the statute. *Rhines*, 544 U.S. at 276. As in *Pace*, the concern warranting the stay-and-abey approach was to protect the petitioner from impairment of his ability to exercise his habeas corpus rights in the future. *Cf. Omar v. Harvey*, 479 F.3d 1 (D.C. Cir. 2007) (affirming the District Court's preliminary injunction barring transfer of a prisoner entered to preserve the court's jurisdiction over the habeas corpus petition of an American citizen detained in a military facility in Iraq).

The exhaustion required by *Hawk* operates as does the exhaustion required by the statute in *Rhines*. Further, the same type of procedural obstacles that dismissal would create under 28 U.S.C. §

---

[7] It was not until May 27, 2007 that Petitioner Khan and his counsel were able to confirm that Respondents intended to conduct a Combatant Status Review Tribunal (CSRT) for him. The CSRT itself was not held until April 13- 14, 2007. Petitioner Khan now intends promptly to file his DTA appeal.

2254 confront detainees in Guantánamo cut off from contact with their lawyers and facing retroactivity questions regarding statutes that purport to impair the jurisdiction that unquestionably existed at the time the habeas corpus petition was filed. *Rhines* is controlling authority regarding stay-and-abey procedures while remedies are being exhausted.

## CONCLUSION

Petitioner Khan holds a constitutional right to habeas relief as a long-term legal resident of the United States with substantial voluntary ties to and property in this country, and to the extent the DTA removes federal court jurisdiction over his petition, the DTA is an unconstitutional abrogation of the writ of habeas corpus.

Alternatively, even if this Court finds that this case is governed by *Boumediene I*, Petitioner Khan's habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits, and Petitioner Khan has not had his individual facts and legal arguments heard. Under governing Supreme Court precedent, the status quo should be preserved while the cases are litigated: under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay the District Court action and hold it in abeyance for a reasonable time to allow the DTA direct actions to be litigated.

For the foregoing reasons, Petitioner Khan respectfully requests that the Court deny the government's motion to dismiss and that the Court proceed with the merits of his challenge to his detention.

Dated: May 3, 2007                     Respectfully submitted,


                                       _____/s/ Gitanjali S. Gutierrez_____

                                       Gitanjali S. Gutierrez
                                       Shayana Kadidal [D.C. Bar No. 454248]
                                       J. Wells Dixon
                                       CENTER FOR CONSTITUTIONAL RIGHTS
                                       666 Broadway, 7th Floor
                                       New York, New York 10012
                                       Tel: (212) 614-6438
                                       Fax: (212) 614-6499

                                       *Counsel for Petitioner*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MAJID KHAN,** *et al.*, <br> *Petitioners,* <br><br> v. <br><br> **GEORGE W. BUSH,** *et al.*, <br> *Respondents.* | ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 06-cv-1690 (RBW) <br> ) <br> ) <br> ) <br> ) <br> ) |

**[PROPOSED] ORDER**

The Court having considered Respondents' Motion to Dismiss,

    IT IS HEREBY ORDERED that the Motion is denied; it is further

    ORDERED that Respondents shall show cause within ___ days of this Order why the Petition should not be granted.


Dated: _____          _____
                                                                   Hon. Reginald B. Walton
                                                                   United States District Judge