IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MAJID KHAN,** *et al.*,<br>    *Petitioners*,<br>v.<br><br>**GEORGE W. BUSH, et al.**,<br>    *Respondents*. | Civil Action No. 06-cv-1690 (RBW) |

## PETITIONERS' REPLY MEMORANDUM IN SUPPORT OF EXPEDITED MOTION FOR EMERGENCY ACCESS TO COUNSEL AND ENTRY OF AMENDED PROTECTIVE ORDER

Petitioner Maijd Khan (Khan) respectfully submits this reply memorandum in support of his Expedited Motion for Emergency Access to Counsel and Entry of the Amended Protective Order.[1] The Respondents claim that Khan should be denied the right to meet with his counsel because the "undisputed" facts show that he falls within the ruling of *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007) (holding that noncitizens without substantial voluntary ties to the United States lack constitutional rights to habeas review), *cert. granted Boumediene v. Bush*, S.Ct. No. 06-1195 (June 29, 2007), and that no factual gaps exist relevant to the question of this Court's jurisdiction. Further, Respondents persist in their significant misrepresentation of the provisions of the Amended Protective Order that expressly govern all levels of classified information, including top secret//sensitive compartmented information [SCI] which Respondents claim is present in this case.[2] Respondents' claims are mistaken and the Court

---

[1] Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba, ("Amended Protective Order") (attached as Exhibit A).

[2] Respondents' argument that Khan does not meet the standard for reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure is irrelevant. Resp'ts Opp'n at 5-6. Khan's prior motions were denied "without prejudice" pending the outcome of the jurisdictional question in *Boumediene*. The Court of Appeals for the District of Columbia has ruled in *Boumediene* and, as Khan set forth his in Opposition to Respondents' Motion to Dismiss and his Surreply, *Boumediene* is inapplicable to him, *see* Petr's Opp'n at 3-5; Petr's Surreply at 2-8. Khan now presents his motion for access to his attorneys without prejudice from this Court's prior denials pending the ruling in *Boumediene*. The Respondents' characterization of Khan's motion as one for "reconsideration" is incorrect. Further delay of Khan's access to counsel as a result of the Supreme Court's nearly unprecedented reversal of its earlier denial of certiorari in *Boumediene* would prejudice his legal rights..

should reject any further delay in allowing Khan access to counsel for purposes of pursuing his habeas petition, including for discovery in support of his jurisdictional assertions. First, as Khan previously argued, *Boumediene* is inapplicable to Khan because he is a noncitizen with ongoing substantial voluntary ties to the United States that vest him with fundamental constitutional protections, including the right to habeas review of his detention. Even if *Boumediene* is applicable, on June 29, 2007, the United States Supreme Court reversed its denial of certiorari and further delay of Khan's access to counsel pending the Supreme Court's final decision would be a miscarriage of justice. Second, Respondents rely on facts that are either in dispute or are not established on the present, insufficient record as a result of Respondents' continuing refusal to permit Khan to meet and consult with his attorney. Serious and weighty factual questions relevant to this Court's jurisdiction cannot be answered absent the opportunity for prompt, confidential attorney-client communications and development of the factual record.

Accordingly, any further delay of Khan's meeting with his counsel, even for the minimal purposes of jurisdictional discovery – nearly ten months after he first sought counsel access, while he is undergoing interrogations and military proceedings, and after he has expressly sought the assistance of counsel – is not justified and undermines the writ of habeas corpus. This Court should grant Khan's motion and afford him prompt access to counsel pursuant to the Amended Protective Order.

**ARGUMENT**

**I.    The Court of Appeals Decision in *Boumediene* Does Not Preclude Khan's Access to Counsel.**

The Court of Appeals' decision in *Boumediene* does not control this case. As Khan set forth more fully in his Surreply in Opposition to Respondents' Motion to Dismiss, the Court in *Boumediene* found that the constitutional habeas protection embodied in the Suspension Clause

2

did not extend to noncitizens without presence or property within the United States. *See* Petr's Surreply at 7-8. Yet unlike other noncitizens in Guantánamo, Khan was a resident and a lawful asylee-holder in this country and possessed strong family, work, material and personal ties to the United States throughout the time of his capture, imprisonment in secret CIA detention and transfer to the custody of military authorities at Guantanamo. Moreover, Khan continues to have these substantial, voluntary connections to the United States that vest him with fundamental constitutional rights. *See* Petr's Surreply at 3-8; *see also Al Marri v. Wright*, No. 06-7427, 2007 U.S. App. LEXIS 13642, at *35-36 (4th Cir. Jun. 11, 2007) (explaining that the Constitution affords certain protections, including Due Process protections, to noncitizens who lawfully reside in the United States and establish work, family, material and personal connections here).

Respondents, however, now seek to deny Khan access to his counsel because Khan:

> is held outside the sovereign territory of the United States and is neither a citizen nor even a legal permanent resident. Despite once having been granted asylum by the United States, it is undisputed that petitioner is an alien who is no longer present in the country, having voluntarily left the United States and been captured in a foreign country and thereafter detained entirely outside the United States sovereign territory.

Resp'ts Opp'n at 7. As Khan previously stated, Respondents concede that Khan resided in the United States legally and held a valid travel document at the time he left the country; that he applied for and was eligible to receive renewal of that document to permit reentry into the United States; and that the only factors preventing his return were his kidnapping and rendition by U.S. officials as well as his indefinite imprisonment in secret CIA detention. *See* Petr's Surreply at 3; Resp'ts Reply at 10 & 11 n. 6. U.S. officials' illegal treatment of Khan and Khan's involuntary inability to return to the United States do not lessen his connection to this country or divest him of his fundamental constitutional right to habeas review of his imprisonment.

3

Khan's ability to meet with his attorneys is critical to safeguarding his rights. His habeas petition is pending before this Court, and having been "afforded access to the courts" it "must necessarily be meaningful, and this meaningful access includes the opportunity to consult with counsel in private." *Al Odah v. Bush*, 346 F. Supp. 2d 1, 11 n.12 (D.D.C. 2004). The ongoing denial of Khan's ability to meet with his existing counsel risks rendering the great writ meaningless.

Even if this Court finds that Khan is similarly situated as other noncitizen detainees imprisoned in Guantanamo, the Supreme Court granted certiorari on June 29, 2007 in *Boumediene*. In light of the developing nature of the law concerning the rights of the detainees in Guantanamo and the ongoing delays in reaching a final resolution of the legal issues, Khan should not be subjected to further denial of his access to counsel that will prejudice his ability to enforce his legal rights. *See Al Razak v. Bush*, Civil Action No. 05-1601 (GK), Order at 3 (Dec. 1, 2006) [dkt. no. 41] ("The longer those appellate proceedings drag on, the more problematic it becomes as to whether a stay serves the interest of justice. It is often said that 'justice delayed is justice denied.' Nothing could be closer to the truth with reference to the Guantanamo Bay cases."); *Mohammon v. Bush*, 05-2386 (RBW), Order (June 27, 2006) [dkt. no. 66] ("Absent contrary direction by the District of Columbia Circuit, this Court is unwilling to take action that might conceivably dilute the Great Writ or impair its exercise."); *see also Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990) (recognizing that if delay in deciding a habeas petition, absent good reason, were routinely permissible, "the function of the Great Writ would be eviscerated"); *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978) ("The writ of habeas corpus, challenging the illegality of detention, is reduced to a sham if the trial courts do not act within a reasonable time."); *Cross v. Harris*, 418 F.2d 1095, 1105 n. 64 (D.C. Cir. 1969) ("This is a habeas proceeding, and thus particularly inappropriate for any delay.").

In sum, despite Respondents' claims to the contrary, Khan is in an entirely different position than the petitioners in *Boumediene* because of his ongoing relationship to the United States as well as the role of U.S. officials in Khan's kidnapping, incommunicado detention, and interference with his ability to return to the United States. *Boumediene* does not preclude this Court's jurisdiction over Khan.

## II. Jurisdictional Facts are in Dispute and Access to Counsel is Necessary for Jurisdictional Discovery.

Relevant jurisdictional facts are also in dispute and these disputes cannot be resolved by the Court prior to Khan's opportunity to consult with his counsel and file factual submissions. The undisputed facts set forth above establish only that as a result of Respondents' wrongful, deliberate conduct, Khan was preventing from lawfully returning to the United States and was denied access to the International Committee of the Red Cross (ICRC), his family, counsel and the court while in the custody of the United States. The remaining factual issues relevant to the question of this Court's jurisdiction are either in dispute or are not established upon the present insufficient record as a result of Respondents' continuing refusal to permit Khan to meet and consult with his attorney. Respondents, for example, claim that U.S. officials did not imprison Khan within the sovereign territory of the United States. *See, e.g.*, Resp'ts Opp'n at 7. Yet, Respondents have made clear since September 2006 that the actual locations of Khan's imprisonment were and remain secret, even to this Court. It is unknown whether, at any point during his detention, Khan was within the jurisdiction of the United States federal courts, yet denied the right to consult with counsel or have access to the courts.

Even if the facts ultimately establish that U.S. officials never held Khan within the sovereign territory of the *continental* United States, Respondents have not disclosed – and Khan has had no opportunity to tell his attorney – whether he was imprisoned aboard a ship flying a U.S. flag after his kidnapping in Karachi in March 2003 and prior to his transfer to Guantánamo

5

in September 2006. The CIA is reported to have held some of its prisoners in secret detention aboard U.S. vessels. *See*, *e.g.*, Dana Priest & Scott Higham, *C.I.A. Has Run a Secret Facility for Some Al Qaeda Detainees, Officials Say*, Wash. Post, Dec. 17, 2004 (noting that "CIA detention facilities have been located on an off-limits corner of the Bagram air base in Afghanistan, on ships at sea and on Britain's Diego Garcia island in the Indian Ocean" and describing the detention of other so-called "high value detainees" who were transferred from CIA secret detention to Guantanamo at the same time as Khan); *see also Hicks v. Bush*, Civil Action No. 02-299, Affidavit by David Hicks, ¶3 (filed Dec. 8, 2004) [dkt. no. 137] (noting that Hicks was imprisoned on a U.S. military vessel prior to his detention at Guantanamo); *Detention of David Hicks: Interview with Former Australian Attorney General Daryl Williams*, Jan. 14, 2002, *available at* http://www.ag.gov.au/agd/WWW/attorneygeneralHome.nsf/Page/ Interview_Transcripts_2002_Transcripts_January_2002_Detention_of_David_Hicks (acknowledging that Hicks was interviewed by Australian authorities while held aboard a U.S. vessel). Respondents have not disclosed whether Khan was held on a U.S. vessel while being denied access to the ICRC, his family and his attorney. If Khan was detained at any point on a U.S. naval vessel, he would have been deemed within the territory of the United States. As explained in *United States v. Rogers*, 50 U.S. 249, 260 (1893), vessels "are deemed to be within the territory of the country of their owners. Constructively, they constitute part of the territory of the nation to which the owners belong." Such a factual situation, which would be known to Khan but not to counsel at this stage, would give rise to new jurisdictional claims.

Khan must be afforded an opportunity to disclose fully to his counsel all of his ongoing, voluntary ties to this country and to present these facts to the Court prior to a ruling on Respondents' Motion to Dismiss. Accordingly, this Court should afford Khan prompt access to counsel pursuant to the Amended Protective Order.

### III. The Protective Order Explicitly Governs Habeas Counsel Access to All Levels of Classified Information, Including TOP SECRET//SCI.

As Khan previously explained, the Amended Protective Order and counsel access provisions expressly reference habeas counsel's access to top secret and top secret//SCI information. *See* Petr's Reply in Support of Expedited Motion for Emergency Access to Counsel and Entry of the Amended Protective Order, at 19-23, filed November 3, 2006 [dkt. no. 10]. The government inexplicably misleads the Court in this regard by arguing that the Amended Protective Order and counsel access regime do not contemplate and are insufficient for addressing access to information classified higher than "secret." Respt's Opp'n at 9-10. Section III.A.1 of the Access Procedures, however, explicitly states that counsel must hold clearance at the Secret level *or higher* and it expressly accounts for access to high-level classified information:

> A. <u>Security Clearance</u>:
>
> 1. Counsel must hold a valid current United States security clearance at the Secret level *or higher*, or its equivalent (as determined by appropriate DoD intelligence personnel).

(emphasis added). Moreover, the Amended Protective Order, to which the counsel access procedures are attached, states:

> 9. The terms "classified national security information and/or documents," "classified information" and "classified documents" refer to:
>
> a. any classified document or information that has been classified by any Executive Branch agency in the interests of national security or pursuant to Executive Order, including Executive Order 12958, as amended, or its predecessor Orders as "CONFIDENTIAL," "SECRET," or "TOP SECRET," or additionally controlled as "SENSITIVE COMPARTMENTED INFORMATION (SCI)," or any classified information contained in such document.

7

(emphasis added). The entire Amended Protective Order and counsel access regime reflects habeas counsel's access to varying levels of classified information designated as SECRET and higher-level information.

The Respondents have had over three years to address the logistical arrangements necessary to afford Petitioner Khan access to counsel, and they have now imprisoned him in Guantánamo for ten months, subjected him to a Combatant Status Review Tribunal and published the redacted transcript from that proceeding on the Department of Defense website. The notion that Respondents can conduct these proceedings at Guantanamo and publicize statements of their choosing by Khan while denying him access to his attorneys flouts the administration of justice. The Respondents must complete their logistical preparations for facilitating Khan's meeting with his attorney and cannot justify any further delay.

Accordingly, the Respondents have offered no grounds for delaying Petitioner Khan's access to counsel and the Court should order Respondents to permit Petitioner Khan immediate access to counsel pursuant to the Amended Protective Order and counsel access procedures.

**CONCLUSION**

Petitioner Khan, like all other individuals detained in Guantanamo, has a right to prompt access to his counsel while his habeas petition is pending before this Court. He is entitled to consult with legal counsel and make informed litigation decisions to defend the Court's jurisdiction over his case. Accordingly, this Court should order Respondents to promptly afford Petitioner Khan access to counsel pursuant to the Amended Protective Order.

Dated: July 2, 2007                    Respectfully submitted,

                                       Counsel for Petitioners:

                                         /s/ Gitanjali S. Gutierrez

                                       Shayana Kadidal [D.C. Bar No. 454248]
                                       J. Wells Dixon [Pursuant to LCvR 83.2(g)]
                                       Gitanjali S. Gutierrez [Pursuant to LCvR 83.2(g)]
                                       CENTER FOR CONSTITUTIONAL RIGHTS
                                       666 Broadway, 7th Floor
                                       New York, New York 10012
                                       Tel: (212) 614-6485
                                       Fax: (212) 614-6499

                                       *Counsel for Petitioners*