# Exhibit 2





## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————————— x
:
MAJID KHAN,                                    :
:
                    Petitioner,               :
:
              v.                              :    No. 07-1324
:
ROBERT M. GATES,                               :
:
                    Respondent.               :
:
———————————————————— x

### MOTION FOR PRESERVATION OF TORTURE EVIDENCE

CENTER FOR CONSTITUTIONAL RIGHTS
J. Wells Dixon
Gitanjali S. Gutierrez
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6423
Fax: (212) 614-6499

Counsel for Petitioner

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

——————————————————— x
                                                          :
MAJID KHAN,                                               :
                                                          :
                            Petitioner,                   :
                                                          :
            v.                                            :   No. 07-1324
                                                          :
ROBERT M. GATES,                                          :
                                                          :
                            Respondent.                   :
                                                          :
——————————————————— x

## MOTION FOR PRESERVATION OF TORTURE EVIDENCE

Petitioner Majid Khan, by and through his undersigned counsel, respectfully submits this motion for an order requiring the government to preserve all documents and information concerning any matter that may be relevant to a claim or defense arising from litigation or potential litigation involving Khan, or that may lead to the discovery of admissible evidence. In particular, and without limitation, Khan seeks preservation of all evidence concerning his torture by U.S. personnel for more than three years at secret overseas prisons operated by the Central Intelligence Agency. Any failure to preserve this evidence, whether intentionally or through neglect, would substantially impair this Court's ability to determine by a preponderance of the evidence whether Khan is properly detained as an "enemy

combatant" under the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, §§ 1001-1006, 119 Stat. 2680, 2739-45 (Dec. 30, 2005).

This evidence should also be preserved because information about the CIA detention and interrogation program – what happened to Khan and other "ghost" prisoners, where it happened, and who is responsible – will be the central focus of any military commission proceedings involving Khan. Any such proceedings would likewise be subject to review by this Court under the DTA. Moreover, Respondent is already on notice that this evidence must be preserved for possible congressional hearings, criminal investigations, and internal agency investigations concerning the torture methods inflicted on Khan. The motion should be granted.

### Preliminary Statement

Unlike other Guantánamo prisoners, Majid Khan has long had legal resident status in the United States. He grew up in the suburbs of Baltimore, Maryland, and has had political asylum in this country since 1998. He graduated from Owings Mills High School in 1999, purchased a home near Baltimore, opened a bank account, and worked for the State of Maryland and Electronic Data Systems. He paid thousands of dollars in taxes to the Internal Revenue Service. His family still resides legally near Baltimore; and some of his family members are U.S. citizens.

On March 5, 2003, Khan was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Karachi, Pakistan, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2

Notwithstanding his substantial, voluntary ties to this country, Khan ███████████

███████████████████████████████ the CIA for detention and

interrogation at secret prisons overseas. Khan was forcibly disappeared by the

CIA. He did not reemerge until September 6, 2006, when he was transferred to the

U.S. Naval Station at Guantánamo Bay, Cuba, where he remains imprisoned

without charge or trial.

Khan filed a petition for a writ of habeas corpus in the U.S. District Court

for the District of Columbia on September 29, 2006, challenging his indefinite

detention in military custody. *See Khan v. Bush*, No. 06-1690 (RBW) (D.D.C.). In

April 2007, Khan appeared before a Combatant Status Review Tribunal ("CSRT")

and was subsequently found to be properly detained as an "enemy combatant." On

August 14, 2007, a few days after the CSRT determination was announced, Khan

filed this DTA action challenging that determination and preserving all other legal

claims, including his right to habeas relief.

Two months later – and more than a year after filing his first legal challenge

to his detention – Khan was finally permitted access to his undersigned counsel.

### The CIA Torture Program

As set forth in the Declarations of Gitanjali S. Gutierrez and J. Wells Dixon,

executed November 29, 2007 (attached hereto as Exs. 1 and 2, respectively), Khan

was subjected to an aggressive CIA detention and interrogation program notable

for its elaborate planning and ruthless application of torture. The methods inflicted on Khan ████████████████████████████████████ were deliberately and systematically applied ██████████ for maximum effect. Khan admitted anything his interrogators demanded of him, regardless of the truth, ████████████████████████████████ ████████████████ in order to end his suffering. As a direct result of this ordeal, Khan has suffered and continues to suffer severe physical and psychological trauma from which he is unlikely ever to recover fully.

Khan's torture was decidedly not a mistake, an isolated occurrence, or even the work of "rogue" CIA officials or government contractors operating outside their authority or chain of command. To the contrary, as described in the Dixon Declaration, Khan ██████████████ prisoners who were similarly abducted, imprisoned and tortured by U.S. personnel at CIA "black sites" around the world. The collective experiences of these men, who were forcibly disappeared by the government and became ghost prisoners, reveal a sophisticated, refined program of torture operating with impunity outside the boundaries of any domestic or international law.

The CIA detention and interrogation program that Khan and the other ghost prisoners were subjected to ██████████████████████████ The

4

focus of the program ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Its purpose was plainly to

intentionally and systematically inflict suffering ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ostensibly in order to gather intelligence

information.    The program further appears to have been carried out under the

immediate direction of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮    The CIA detention and interrogation program described by Khan

and other ghost prisoners can only be characterized as state-sanctioned torture.

For instance, as set forth in the Gutierrez Declaration, ¶¶ 74-91, when Khan

arrived ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5



6



At his CSRT proceeding in April 2007, Khan discussed at length exactly what happened to him in the CIA detention and interrogation program, and, in particular, how much of the evidence against him was obtained only as a result of the brutal, systematic torture he endured. However, the only CSRT transcript produced by the government is heavily redacted to omit this testimony. *See* Redacted Transcript of Khan's CSRT Proceeding (attached hereto as Ex. 3).

Khan now moves for an order requiring Respondent to preserve all documents and information relating to his torture, cruel, inhuman and degrading treatment, and other unlawful coercion, which is necessary to ensure that such evidence is not lost or destroyed, and is available for use in this DTA action and other litigation or potential litigation involving Khan.

## Argument

Respondent's obligation to preserve documents and information concerning Guantánamo prisoners is not new. That obligation did not arise with the enactment of the DTA, the filing of this case or the Court's recent rulings in *Bismullah v. Gates*, Nos. 06-1197 & 06-1397 (D.C. Cir.), concerning the scope of the record on review in DTA actions. It has existed at least since the Supreme Court held in *Rasul v. Bush*, 542 U.S. 466 (2004), that Guantánamo prisoners have the right to challenge their detention through habeas corpus, and since the CSRTs were created a few days thereafter.

At the time of the 2004 CSRTs, various government officials were named in numerous actions asserting habeas and other claims, including challenges to extraordinary rendition and torture. The lawsuits were proceeding in court and growing in number as more prisoners sought to challenge their detention. The government therefore had to know that it was obligated to preserve all evidence relating to the prisoners, including the "Government Information" as defined in the

8

CSRT regulations, regardless of whether the evidence was actually compiled for

use in the CSRTs. That was particularly so because the government had exclusive

possession, custody and control of the evidence.[1] Indeed, several District Courts

entered preservation orders over objections by government officials that such

orders were not necessary because they understood and would honor their existing

preservation obligations.[2]

---

[1] The CSRT regulations (or "CSRT Procedures") are contained in Deputy Secretary of Defense Paul Wolfowitz's "Order Establishing Combatant Status Review Tribunal" (July 7, 2004), and Navy Secretary Gordon England's Memorandum "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants detained at Guantanamo Naval Base, Cuba" (July 29, 2004). They define the "Government Information" as:

> reasonably available information in the possession of the U.S. Government bearing on the issue of whether the detainee meets the criteria to be designated as an enemy combatant, including information generated in connection with the initial determination to hold the detainee as an enemy combatant and in any subsequent reviews of that determination, as well as any records, determinations, or reports generated in connection with such proceedings (cumulatively called hereinafter the "Government Information").

CSRT Procedures, Encl. 1 § E(3). The Government Information was critical to the ongoing litigation in 2004 because by definition it included all information that was relevant to whether a prisoner met the criteria for proper detention in military custody as an "enemy combatant."

[2] See, e.g., Order, Al-Marri v. Bush, No. 04-2035 (GK) (D.D.C. Mar. 7, 2005) (dkt. no. 25); Order, Al-Shiry v. Bush, No. 05-490 (PFL) (D.D.C. Mar. 23, 2005) (dkt. no. 14); Order, Anam v. Bush, No. 04-1194 (HHK) (D.D.C. June 10, 2005) (dkt. no. 124); Order, Abdah v. Bush, No. 04-1254 (HHK) (D.D.C. June 10, 2005) (dkt. no. 155); Mem. Op. & Order, El-Banna v. Bush, No. 04-1144 (RWR) (D.D.C. July 18, 2005) (dkt. no. 36); Mem. Op. & Order, Slahi v. Bush, No. 05-881 (RWR) (D.D.C. July 18, 2005) (dkt. no. 10); Mem. Order, Zadran v. Bush, No. 2367

9

Although Khan was not transferred to Guantánamo until 2006, the government nonetheless had an obligation to preserve evidence relating to his imprisonment and torture by the CIA, which arose at the time of his abduction in March 2003. This obligation arose then because, since the inception of the CIA torture program and the capture of Abu Zubaydah in 2002, evidence obtained from ghost prisoners was gathered in anticipation of, and later introduced in support of, criminal prosecutions against other individuals. Notably, for instance, evidence purportedly obtained from Khan during his imprisonment in CIA custody was introduced in the government's criminal prosecution of Uzair Paracha, who was indicted on October 8, 2003.

Numerous disclosures reveal, however, that the government has violated and continues to violate its existing preservation obligations. Whether intentional or the result of neglect, these violations have included the loss, destruction and

(RWR) (D.D.C. July 19, 2006) (dkt. no. 36); *cf.* Order, *Al-Anazi v. Bush*, No. 05-345 (JDB) (D.D.C. Oct. 28, 2005) (denying motion for preservation as moot because "respondents have a pre-existing duty to preserve the very information that this motion addresses"). Relying largely on *Harris v. Nelson*, 394 U.S. 296 (1969), the District Courts concluded that they had jurisdiction to enter preservation orders under the All Writs Act, 28 U.S.C. § 1651. They reasoned that because the discovery provisions of the Federal Rules of Civil Procedure did not automatically apply in whole to habeas cases, and because there had not been full disclosure of the facts authorizing the prisoners' challenged detention, preservation orders were necessary to ensure the just and proper disposition of the cases. That reasoning applies with equal force here, where the government has refused to produce any evidence to justify Khan's detention and questions concerning the scope of discovery applicable to DTA actions have not been resolved.

10