suppression of evidence critical to Guantánamo habeas and DTA actions, as well as the military commissions and at least one federal criminal prosecution. As noted below, intelligence information and evidence of prisoner abuse are particularly susceptible of spoliation. Accordingly, because entry of a preservation order is necessary and not unduly burdensome, the Court should grant this motion. *See Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (Fed. Cl. 2004).[3]

## I.  A PRESERVATION ORDER IS NECESSARY BECAUSE THE GOVERNMENT'S PRIOR CONDUCT SHOWS A SUBSTANTIAL LIKELIHOOD OF SPOLIATION

To demonstrate that a preservation order is necessary, "the proponent ordinarily must show that absent a court order, there is significant risk that relevant evidence will be lost or destroyed – a burden often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place." *Id.* Here, that standard is plainly satisfied.

As set forth in the Gutierrez and Dixon Declarations, *see* Exs. 1 & 2, there is no doubt that Khan was subjected to a program of state-sanctioned torture. Nor is there any question that the "confessions" and other "evidence" obtained from him

---

[3] The government has previously argued that preservation orders may only be entered where the requirements for a preliminary injunction are met. But "a document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery." *Pueblo of Laguna*, 60 Fed. Cl. at 138 n.8, *cited in* Order, *Al-Marri v. Bush*, No. 04-2035 (GK) (D.D.C. Mar. 7, 2005) (dkt. no. 25). In any event, the requirements for a preliminary injunction are plainly satisfied here.

in this program are exculpatory because the circumstances under which the information was extracted cast considerable doubt on their accuracy and reliability. The same is true of any information about Khan that may have been obtained from other ghost prisoners under torture.

Absent a preservation order, there is a substantial risk that the torture evidence will disappear. Indeed, over the last several years there have been many reported instances where intelligence information and evidence of prisoner abuse has disappeared. Recent disclosures concerning the suppression of similar evidence further underscore the risk of spoliation here.

In the DTA cases, the government has failed to preserve the Government Information that is essential to this Court's review of the CSRTs findings.[4] On

---

[4] On July 20, 2007, this Court held that prisoners at Guantánamo Bay who challenge their detention under the DTA are entitled to the record on review, which includes the Government Information. *See Bismullah v. Gates*, Nos. 06-1197 & 06-1397, 2007 U.S. App. LEXIS 17255, at *2 (D.C. Cir. July 20, 2007). The Court concluded that it "must be able to review the Government Information with the aid of counsel for both parties. . . . [T]he court cannot, as the DTA charges us, consider whether a preponderance of the evidence supports the [Combatant Status Review] Tribunal's [enemy combatant] status determination without seeing all the evidence." *Id.* at *18.

On October 3, 2007, the Court denied Respondent's petition for rehearing and reiterated that "the record on review must include all Government Information, as defined by the DoD Regulations." *Bismullah v. Gates*, Nos. 06-1197 & 06-1397, Slip. Op. at 9 (D.C. Cir. Oct. 3, 2007). "Whether the Recorder selected to be put before the Tribunal all exculpatory Government Information, as required by the DoD Regulations, and whether the preponderance of the evidence supported the conclusion of the Tribunal, cannot be ascertained without consideration of all the

September 27, 2007, the government filed an omnibus motion to stay orders entered by the Court requiring them to file the certified index of record in this case and numerous other DTA actions. In support of the motion, the government disclosed, among other things, that "the reality is that there is no readily accessible compilation of the record as defined in *Bismullah* for completed CSRTs"; "[t]here is no single file containing that material or document memorializing the Recorders' mental processes"; and "it is impossible to recreate with any precision the information that was reviewed by Recorders in performing their duties." Resp't's Omnibus Mot. to Stay at 28-30. In sum, Respondent contended, compilation of the Government Information is like "looking for a needle in a haystack." *Id.* at 31.[5]

These disclosures are remarkable in relation to this case because Khan's CSRT hearing was conducted in April 2007. How Respondent could have apparently failed to keep track of, or otherwise preserve, the Government Information relating to Khan for a mere *six months* after his CSRT – and at a time when the parties in *Bismullah* were litigating the scope of the record on review – is

---

Government Information." *Id.* at 5. The Court further concluded that "if the Government cannot, within its resource constraints, produce the Government Information collected by the Recorder with respect to a particular detainee, then this court will be unable to confirm that the CSRT's determination was reached in compliance with the DoD Regulations and applicable law." *Id.* at 8.

[5] Respondent's stay motion is still pending before the Court.

unfathomable.[6] Moreover, it is indisputable that the Government Information in Khan's case included torture evidence, which was fully redacted from the only transcript of Khan's CSRT proceeding that the government has produced. *See* Ex. 3. That such critical evidence was apparently lost or destroyed in such a short period of time, and was never produced to counsel or the Court, raises concerns that information about the CIA torture program may not be preserved absent an order from the Court.

Military officers involved in the CSRTs have further testified recently about the loss, destruction and suppression of critical evidence concerning Guantánamo prisoners, including exculpatory evidence. Rear Admiral James M. McGarrah, the Director of the Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC") from July 2004 until March 2006, stated in a declaration filed in this Court in *Bismullah* that exculpatory evidence was not always presented to the CSRTs. *See* Declaration of Rear Admiral (Retired) James

---

[6] Regardless of how the record on review would later be defined by this Court, the CSRT regulations required Respondent to compile and maintain the Government Information. The CSRT regulations specify that "the Recorder *shall* obtain and examine the Government Information." CSRT Procedures, Encl. 2 § C(1) (emphasis added). The Personal Representative is also required to review the Government Information. *See, e.g., id.*, Encl. 1 § G(4) ("The Director, CSRT, will schedule a Tribunal hearing for a detainee within 30 days after the detainee's Personal Representative *has reviewed* the Government Information[.]") (emphasis added); *id.*, Encl. 3 § C(2) ("After the Personal Representative has reviewed the Government Information . . ."). That is why the CSRT regulations require the Recorder to "obtain," and not merely review, the Government Information.

M. McGarrah, executed May 31, 2007, ¶¶ 11-13 (attached hereto as Ex. 4).[7] He also stated that other information was simply lost:

> OARDEC made an effort to retain the Government Information . . . compiled for each CSRT. It is my understanding that despite their efforts, some of these electronic files became corrupted following a technical change-over from one computer system to another in 2005. This has made it difficult to fully recreate the electronic files of Government Information compiled for each tribunal. I also understand that OARDEC is currently working to retrieve stored data from system archives to see if it is possible to recreate the files. As of this date, OARDEC is uncertain whether this is possible.

*Id.* ¶ 16.

According to Admiral McGarrah, there were also instances where the Recorders responsible for gathering the Government Information were not permitted access to relevant information by intelligence or law enforcement agencies, which "declined to approve the use of information" that was required to be considered by the CSRTs. *See id.* ¶¶ 10, 12.

A third military officer likewise testified about instances where intelligence agencies refused to provide exculpatory evidence to the CSRT panels or state that no such evidence existed:

---

[7] A second military officer who sat on forty-nine CSRT panels stated that "[t]here was no exculpatory evidence presented separately, as required in the CSRT rules, in any CSRT hearing that I sat on." Declaration of William J. Teesdale, Esq. (Redacted), executed Sept. 4, 2007, ¶ 7.1 (describing interview with U.S. Army officer) (attached hereto as Ex. 5).

15

> I was specifically told on a number of occasions that the information provided to me was all that I would be shown, but I was never told that the information that was provided constituted all available information. On those occasions when I asked that a representative of the organization provide a written statement that there was no exculpatory evidence, the requests were summarily denied.
>
> At one point, following a review of information, I asked the Office of General Counsel of the intelligence organization that I was visiting for a statement that no exculpatory information had been withheld. I explained that I was tasked to review all available materials and to reach a conclusion regarding the non-existence of exculpatory information, and that I could not do so without knowing that I had seen all information.
>
> The request was denied, coupled with a refusal even to acknowledge whether there existed additional information that I was not permitted to review. In short, based upon the selective review that I was permitted, I was left to "infer" from the absence of exculpatory information in the materials that I was allowed to review that no such information existed in materials that I was not allowed to review.
>
> . . . It was not possible for me to certify or validate the non-existence of exculpatory evidence as related to any individual undergoing the CSRT process.
>
> The content of intelligence products . . . was often left entirely to the discretion of the organizations providing the information. . . . In other words, the person preparing materials for use by the CSRT board members did not know whether they had examined all available information or even why they possessed some pieces of information but not others.

Declaration of Stephen Abraham, executed June 15, 2007, ¶¶ 12-16 (attached hereto as Ex. 6).

16