These failures are not unique to the CSRT process. In the context of the military commissions, certain prosecutors long ago expressed substantial concerns about the loss, destruction and suppression of evidence. In an unclassified email chain from 2004, one military prosecutor stated:

I feel a responsibility to emphasize a few issues.

. . . .

. . . . My fears are not insignificant that the inadequate preparation of the cases and misrepresentation related thereto may constitute dereliction of duty, false official statements, or other criminal conduct.

An environment of secrecy, deceit and dishonesty exists within our office.

Redacted Email by CPT John Carr dated March 15, 2004 (attached hereto as Ex. 7).

The officer then offered several examples, including the following involving allegations that evidence of prisoner torture and abuse was destroyed or withheld:

2. *Suppressing FBI Allegations of Abuse at Bagram* – Over dinner and drinks, KK and Lt. [redacted] heard from FBI agents that detainees were being abused at the Bagram detention facility. Lt. [redacted] told KK after dinner that they couldn't report the allegations because it was told to them "in confidence." KK told CDR Lang, LtCol [redacted] and [redacted] anyway, and all three stated that there was not credible evidence and concluded on their own volition that they should not report the allegation to [Col Borch] or other members of the office.

. . . .

4. *The disappearance/destruction of evidence –*

17

> As I have detailed to you, my copy of CDR Lang's notes detailing the [FBI] 302 in which Bahlul claims torture and abuse is now missing from my notebook. The 302 can not [sic] be located. Additionally, [redacted] of the FBI related last week that he called and spoke to CDR Lang about the *systematic destruction of statements of the detainees*, and CDR Lang said that this did not raise any issues.
>
> [Col Borch] told the AF generals that we had no indication that al Bahlul had been tortured. It was after this statement, which CDR Lang quietly allowed to go uncorrected, that I brought up CDR Lang's missing notes to the contrary. You admitted to me that you were aware that al Bahlul had made allegations of abuse.
>
> In our meeting with OGA [i.e., "Other Government Agency," meaning an intelligence agency], *they told us that the exculpatory information, if it existed, would be in the 10% that we will not get with our agreed upon searches*. I again brought up the problem this presents to us in the car on the way back from the meeting, and *you told me that the rules were written in such a way as to not require that we conduct such thorough searches*, and that we weren't going to worry about it.
>
> *You have repeatedly said to the office that the military panel will be handpicked and will not acquit these detainees, and we only needed to worry about building a record for the review panel.*
>
> . . . .
>
> The evidence does not indicate that our military and civilian leaders have been accurately informed of . . . the true capability of our accuseds [sic].
>
> . . . It is difficult to believe that the White House has approved this situation, and I fully expect that one day, soon, someone will be called to answer for what our office has been doing for the last 14 months.

*Id.* (emphases added).

The loss, destruction and suppression of evidence of prisoner torture and abuse may have been widespread at Guantánamo, Bagram and other U.S. prisons. In Guantánamo, for example, one former military linguist described how videotapes of detainee beatings by the Immediate Reaction Force teams routinely disappeared. *See* Eric Saar & Viveca Novak, Inside the Wire: A Military Intelligence Soldier's Eyewitness Account of Life at Guantánamo 102, 136 (2005). In Bagram, "crucial witnesses were not interviewed, documents disappeared, and at least a few pieces of evidence were mishandled" during investigations into the deaths of detainees held in military custody. Tim Golden, *Army Faltered in Investigating Detainee Abuse*, N.Y. Times, May 22, 2005, at 1. Likewise, FBI agents reported efforts to "cover up" serious physical abuses of civilian detainees in Iraq. *See* Ex. 8 (redacted FBI report dated June 25, 2004).

More recently disclosures confirm that the government's apparent mishandling of evidence has not abated. In the military commissions, the government recently revealed the existence of exculpatory evidence that had been withheld from a Guantánamo prisoner for several years. *See* William Glaberson, *Decks Are Stacked in War Crimes Cases, Lawyers Say*, N.Y. Times, Nov. 8, 2007 ("Military defense lawyers said that on the eve of the hearing, military prosecutors told them for the first time of a government witness who might be able to help a detainee, Omar Ahmed Khadr, counter the war crimes charges on which he was

arraigned Thursday."); *see also* Andy Worthington, *The Trials of Omar Khadr*, Counterpunch, Nov. 15, 2007, *available at* http://www.counterpunch.org/worthington11152007.html.

The Justice Department also recently revealed that "[t]he CIA has three video and audio recordings of interrogations of senior al Qaida captives but misled federal judges about the evidence during the case against terrorist Zacarias Moussaoui." Greg Gordon, *CIA Admits to Recording Interrogations of Top Al Qaida Captives*, McClatchy Washington Bureau, Nov. 14, 2007. Although the prosecution of Moussaoui had been ongoing for more than four years, the Justice Department disclosed that "the CIA didn't notify them until Sept. 13 that it had discovered a videotape and the transcript of an interrogation of an unidentified detainee. . . . Among the prisoners whose testimony Moussaoui sought were Khalid Sheikh Mohammed, who allegedly admitted masterminding the 9/11 attacks after he was waterboarded; Ramzi Binalshibh, a senior al Qaida member who allegedly coordinated the attacks; and financier Mustafa Ahmed al Hawsawi." *Id.* "The fact that the audio/video recording of enemy combatant interrogations occurred, and that the United States was in possession of three of those recordings is, as noted, inconsistent with factual assertions in CIA declarations dated May 9, 2003 . . . and November 14, 2005." Redacted Letter from Justice Department to

20

U.S. Court of Appeals for the Fourth Circuit and U.S. District Court for the Eastern District of Virginia, dated Oct. 25, 2007, at 3 of 5 (attached hereto as Ex. 9).

These revelations are particularly troubling in relation to this case because Khan was abducted, imprisoned and tortured for more than three years by the CIA, pursuant to the same program that these other ghost prisoners were subjected to, ████████████ There is again simply no assurance that such critical evidence will not be lost or suppressed in connection with this litigation or other potential litigation, as apparently happened in the Moussaoui trial.

In sum, the preceding events demonstrate a substantial risk that evidence of Khan's torture may be lost, destroyed or suppressed absent the entry of a preservation order in this case. In the context of "enemy combatant" litigation, and particularly with respect to former CIA prisoners like Khan, the government is simply no longer entitled to a presumption of regularity when discharging its existing preservation obligations.

## II. A PRESERVATION ORDER IS NOT UNDULY BURDENSOME BECAUSE IT REQUIRES NOTHING MORE THAN WOULD BE REQUIRED IN ORDINARY CIVIL DISCOVERY

In addition to showing that a preservation order is necessary to avoid spoliation, a proponent must show that "the particular steps to be adopted will be effective, but not overbroad – the court will neither lightly exercise its inherent

21

power to protect evidence nor indulge in an exercise of futility." *Pueblo of Laguna*, 60 Fed. Cl. at 138. Again, that standard is satisfied here.

Khan's request for a preservation order is tailored to preserve all documents and information concerning any matter that may be relevant to a claim or defense arising from litigation or potential litigation involving Khan, or that may lead to the discovery of admissible evidence. In particular, this motion seeks the preservation of evidence concerning Khan's torture and other unlawful treatment, which, whether the result of "official government policy, cumulative evidence of specific practices, or something else, may be probative of the treatment of [Khan and other ghost prisoners] or may lead to other probative evidence." Mem. Order at 5, *Zadran v. Bush*, No. 05-2367 (RWR) (D.D.C. July 19, 2006) (dkt. no. 36).

As indicated above, information about what happened to Khan and other ghost prisoners in the CIA detention and interrogation program will be the central focus of any and all litigation involving Khan. This motion thus seeks a preservation order that imposes no greater obligation on Respondent than the Federal Rules of Civil Procedure would otherwise impose on a litigant engaged in discovery in an ordinary civil action. *See id.* at 5-6.

Moreover, the preservation order proposed by Khan would not be futile: "If nothing else, it will serve to reemphasize that [Respondent] needs to take extraordinary precautions . . . to prevent either the purposeful or inadvertent

22

destruction or loss of records. Such an order also serves as fair warning that sanctions may be imposed should [Respondent] instead fail adequately to protect records relevant to this action." *Pueblo of Laguna*, 60 Fed. Cl. at 139.

### Conclusion

For all of the foregoing reasons, this motion should be granted.

Dated:   Washington, DC
         November 29, 2007

>                          Respectfully submitted,
>
>                          Counsel for Petitioner:
>
>                          _____
>                          J. Wells Dixon [Bar No. 51138]
>                          Gitanjali S. Gutierrez
>                          CENTER FOR CONSTITUTIONAL RIGHTS
>                          666 Broadway, 7th Floor
>                          New York, New York 10012
>                          Tel: (212) 614-6423
>                          Fax: (212) 614-6499

## CERTIFICATE OF SERVICE

I hereby certify that on November 30, 2007, I caused the foregoing Motion for Preservation of Torture Evidence, with exhibits, to be filed and served on counsel listed below by causing an original and six copies to be personally delivered to the Court Security Office.

Robert M. Loeb, Esq.
U.S. Department of Justice
Civil Division, Room 7268
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001

Counsel for Respondent

_____
Gitanjali S. Gutierrez