REDACTED

FILED WITH
COURT SECURITY OFFICER
12/6/07 _____
DATE

[ORAL ARGUMENT NOT SCHEDULED]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

```
————————————————————————— x
                               :
MAJID KHAN,                    :
                               :
            Petitioner,        :
                               :
      v.                       :    No. 07-1324
                               :
ROBERT M. GATES,               :
                               :
            Respondent.        :
                               :
————————————————————————— x
```

## MOTION TO DECLARE INTERROGATION METHODS APPLIED AGAINST PETITONER CONSTITUTE TORTURE

Petitioner Majid Khan ("Petitioner" or "Majid"), a prisoner at the U.S. Naval

Station at Guantánamo Bay, Cuba ("Guantánamo"), who seeks review under the

Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, §§ 1001-1006,

119 Stat. 2680, 2739-45, moves by and through his undersigned counsel for an

order declaring that the interrogation methods applied against him by U.S.

personnel constitute torture and other forms of impermissible coercion.[1]

---

[1] Counsel for Respondents do not consent to this motion seeking a declaration that Petitioner's interrogations by U.S. personnel while in secret CIA detention and elsewhere constitute torture.

REDACTED

## PRELIMINARY STATEMENT

Unlike other Guantánamo prisoners, Majid Khan has long had legal resident status in the United States and strong voluntary ties to this country. Majid is a twenty-seven-year-old U.S. resident and asylee-holder and a citizen of Pakistan, an ally of the United States.[2] He grew up in the suburbs of Baltimore, Maryland, and has had political asylum in this country since 1998. He graduated from Owings Mills High School in 1999, purchased a home near Baltimore, opened a bank account, and worked for the State of Maryland and Electronic Data Systems. He paid thousands of dollars in taxes to the Internal Revenue Service. His family still resides legally near Baltimore; and some of his family members are U.S. citizens. Majid's only home is in this country.

On March 5, 2003, Majid ███████████████████████████ in Karachi, Pakistan, ███████████████████████████████████████. Notwithstanding his substantial, voluntary ties to this country, Petitioner was ███████████████████████████████████████████████████ ████████████████████ to CIA custody for detention and interrogation at secret prisons overseas. Majid was forcibly disappeared by the CIA. He did not reemerge until September 6, 2006, when he was transferred to the U.S. Naval

---

[2] Petitioner's background, secret detention and interrogation are set forth in detail in the Declaration of Gitanjali S. Gutierrez ("Gutierrez Declaration"), attached hereto as Exhibit 1.

Station at Guantánamo Bay, Cuba, where he remains imprisoned without charge or trial.

Majid then filed a petition for a writ of habeas corpus in the U.S. District Court for the District of Columbia on September 29, 2006, challenging his indefinite detention in military custody. *See Khan v. Bush*, No. 06-1690 (RBW) (D.D.C.). In April 2007, he appeared before a CSRT and was subsequently found to be properly detained as an "enemy combatant." On August 14, 2007, a few days after the CSRT determination was announced, Majid filed this DTA action challenging that determination and preserving all other legal claims, including his right to habeas relief.

### Majid's Secret Detention and Interrogations Using Torture and Cruel, Inhuman and Degrading Treatment, and Other Impermissible Forms of Coercion

From March 2003 until the present day, the United States has imprisoned and interrogated Petitioner Majid Khan and other individuals in secret detention using methods that include torture, cruel, inhuman and degrading treatment, or other unlawful coercion to extract confessions and other incriminating information from them. U.S. interrogators applied techniques against Majid long-viewed as abhorrent by our Nation and our Anglo-American jurisprudence.

3



Further, these incidents were not isolated acts of rouge CIA agents or contractors. Rather, the secret detention and interrogation regime to which U.S. personnel subjected Majid was a carefully developed program ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ calculated and designed deliberately to apply techniques euphemistically referred to as "enhanced interrogation methods" or "alternative interrogation methods" under conditions of careful monitoring by ▇▇▇▇▇▇▇▇▇▇▇▇ It was, by all accounts, a program of U.S. government torture ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇

### CSRT Consideration of Information Related to Petitioner Extracted By Torture or Other Forms of Impermissible Coercion

Respondents have refused to product any "government information" in this case. Rather, on September 27, 2007, they filed a pending omnibus Motion to

---

[3] Further details of this program and the interrogation techniques CIA agents applied against other individuals are set forth in the Declaration of J. Wells. Dixon ("Dixon Declaration"), attached hereto as Exhibit 2.

4

Stay Orders to File Certified Index to Record, and have not made any further submissions to the record. Despite Respondents' failure to produce the government information, however, Petitioner Khan hereby submits documents he prepared and presented during his CSRT proceeding that confirm that the tribunal and reviewing authorities were presented with evidence that U.S. personnel extracted information from Petitioner Khan during his imprisonment in U.S. custody that was obtained through torture, cruel, inhuman or degrading treatment, and unlawful coercion.[4]

Because this Court must determine whether Petitioner's CSRT complied with its own regulations – including the requirement that the CSRT assess whether any statements were obtained through coercion and the probative value of such information – and whether these regulations are consistent with the Constitution and laws of the United States, this Court should grant the requested relief and declare that the interrogation methods applied against Petitioner Khan constitute torture and other forms of impermissible coercion.

---

[4] See, e.g., Khan CSRT Exhibit D-b, Majid Khan written statement of Torture for Combatant Status Review Tribunal taken Mar 2007 by PR 3, attached hereto as Exhibit 3, and Khan CSRT Exhibit D-c, Majid Khan Oral Statement of Torture for Combatant Status Review Tribunal taken Mar/Apr 2007 by PR 3, attached hereto as Exhibit 4.

ARGUMENT

I.    **Information Related to Petitioner Indisputably Was Obtained Through Torture, Cruel, Inhuman and Degrading Treatment and Unlawful Coercion**

A.    **Torture is Clearly Defined Under U.S. Law**

Under the applicable definitions, the tactics used against Majid constitute torture and unlawful coercion. The Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, 120 Stat. 2600, prohibits torture and cruel, inhuman and degrading treatment if it inflicts "severe physical or mental pain or suffering." The MCA incorporates by reference the definitions of 18 U.S.C. § 2340(2), which provide, *inter alia*, that:

> "severe mental pain or suffering" means the prolonged mental harm caused by or resulting from—
>
> (A) the intentional infliction or threatened infliction of severe physical pain or suffering;
>
> \*        \*        \*
>
> (C) the threat of imminent death; or
>
> (D) the threat that another person will imminently be subjected to death, severe physical pain or suffering . . . .

Although the MCA does not provide further guidance concerning the standard to be used to define torture or impermissible coercion, military and federal court decisions have categorized many of the various methods of interrogation and

6

coercion used against Petitioner as torture or impermissible coercion.[5]

### B.    U.S. Personnel Tortured Petitioner and Other Detainees to Obtain Information Related to Petitioner's Status

Information related to Petitioner that U.S. interrogators obtained from Petitioner Khan and other detainees ▮▮▮▮▮▮▮▮▮▮ was indisputably extracted through torture, cruel, inhuman and degrading treatment and unlawful coercion. During Petitioner's most shocking period of interrogations, he was submitted to ▮▮ ▮▮▮▮▮▮ interrogation tactics that have long been prohibited by U.S. civil and military law.

Most notably, for example, Petitioner Khan ▮▮▮▮▮▮▮▮▮▮▮▮▮



---

[5] *See, e.g., United States v. Lee*, 744 F.2d 1124 (5th Cir. 1984) (affirming conviction for "water torture" perpetrated against criminal defendants by a county sheriff and two deputies); *United States of America v. Chinsaku Yuki*, Manilla (1946) (military commission convened by Commanding General Phillipines-Ryukus Command convicted Sergeant-Major Chinsaku Yuki of the Kempentai of using "water torture" against individuals in his custody), NARA NND 775011 Record Group 331 Box 1586.



8





In addition to these extreme tactics, throughout his imprisonment, Respondents and other government agencies have subjected Petitioner Khan to a variety of other forms of torture, cruel, inhuman and degrading treatment, and other lesser forms of impermissible coercion. These methods have included:



Petitioner seeks a declaratory ruling from this Court that each of these methods constitute torture in violation of the MCA and other federal law.

C.    Petitioner's CSRT Considered Information Obtained By Or
Derived From Torture or Other Impermissible Forms of
Coercion

Petitioner placed before his CSRT panel credible and detailed information

concerning the torture used against him while in U.S. custody, including the

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ No question

arises that the CRST panel and reviewing authorities were aware of this

information. Yet, a serious risk exists that Majid's CSRT, in reaching its final

determination, relied in whole or in part upon information obtained unlawfully

from Majid or other individuals ███████████████████ Furthermore,

information acquired through torture and other unlawful techniques led

interrogators to discover additional information that was likely produced in

Petitioner's CSRT as part of the government information affirming Petitioner's

"enemy combatant" classification.

Finally, other individuals detained in the ██████ secret detention and

interrogation program include Ammar al Baluchi, Guantanamo Detainee ISN

#10018, Mohd Farik bin Amin Zubair, Guantanamo Detainee ISN #10021, and

Khalid Sheikh Mohammed, Guantanamo Detainee ISN #10024, whom

Respondents have publicly alleged have information related to Petitioner's status

determination[6] and upon whose statements Petitioner's CSRT may have relied

upon in whole or in part.

### III.   THIS   COURT   SHOULD   DECLARE   PETITIONER'S INTERROGATION CONSTIUE TORTURE

#### A.   The CSRT Regulations and the MCA Prohibit Reliance Upon Information Obtained By Torture

It is unsettled to what extent the fundamental concerns underlying judicial

reliance on torture and other impermissible forms of coercion are embodied within

the judicial review available under the DTA.[7]  The Court should, however, rule

whether or not the tactics applied to Petitioner constitute torture or impermissible

coercion in order to conduct the review required even under the narrowest reading

of the DTA.[8]

This Court must determine whether the CSRT panel followed the procedures

---

[6] *See, e.g.*, Unclassified Verbatim Transcript of Combatant Status Review Tribunal Hearing for ISN 10018 (Al Baluchi, Ammar), at 23-24; Unclassified Summary of Evidence for Combatant Status Review Tribunal – Mohd Farik Bin Amin (Zubair), at 2.

[7] To the extent that the DTA prohibits this Court from holding that Petitioner is unlawfully detained because the CSRT justified his enemy combatant status and detention pursuant to statements extracted through torture or other impermissible forms of coercion, the DTA review is an inadequate substitute for the writ of habeas corpus.

[8] To the extent the Court requires further information prior to ruling on this motion concerning the interrogation tactics applied to Petitioner, discovery and an evidentiary hearing should be scheduled under appropriate procedures that afford Petitioner a meaningful opportunity to pursue his DTA claims and that safeguard national security concerns, if any, related to the interrogation methods applied in the CIA secret detention program.

set forth in the July 2006 Implementation of Combatant Status Review Tribunal

Procedures for Enemy Combatants, attached hereto as Exhibit 5,[9] in reaching its

conclusion that Petitioner is properly detained as an "enemy combatant." Pursuant

to these regulations, the CSRT panel must have assessed "whether any statement

derived from or relating to evidence regarding the status of Petitioner was obtained

as a result of coercion and the probative value, if any, of such statement." *See*

Implementation of Combatant Status Review Tribunal Procedures for Enemy

Combatants, at 30; *see also* DTA at § 1005(b)(1). It cannot be disputed that this

Court has the authority to order the requested relief pursuant to the DTA, as well as

the All Writs Act, 28 U.S.C. § 1651.

> **B.     The Prohibition Against Judicial Reliance upon Information Obtained by or Derived From Torture and Other Lesser Unlawful Coercion is Deeply-Rooted**

Our Nation's fundamental traditions prohibit judicial reliance upon

statements extracted through torture and other lesser forms of impermissible

coercion to justify imprisonment of an individual.[10] Torture has been illegal under

---

[9] The government conducted Petitioner's CSRT on or around April 15-19, 2007, and the CSRT panel's decision was finalized on or around August 9, 2007. Consequently, CSRT regulations promulgated in July 2006 were applicable to his proceeding.

[10] To the extent that the DTA prohibits this Court from holding that Petitioner is unlawfully detained because the CSRT justified his enemy combatant status and detention pursuant to statements extracted through torture or other impermissible forms of coercion, the DTA review is an inadequate substitute for the writ of habeas corpus.

English common law for more than 350 years.[11] Common law judges did not

consider evidence against a defendant that investigators extracted through torture

and unlawful coercion because the judges considered this information inherently

unreliable and viewed judicial acquiescence in these practices as degrading the

dignity of justice.[12]

Our Founders shared this revulsion of judicial reliance upon statements

extracted by torture or impermissible coercion and embodied protections against

this practice within the Constitution.[13] Our criminal law also prohibits acts of

---

[11] *See, e.g.*, James Heath, *Torture and English Law*, 178 (1982).

[12] Although the rare use of torture had a brief appearance in English Common Law during the period of the infamous Star Chamber, 5 William S. Holdworth, *A History of English Common Law*, 184-85 (1924), it was used even under these universally condemned circumstances solely for purposes of investigation. At no point in English common law history were statements obtained through torture or other inhumane treatment used against criminal defendants. *See, e.g.*, Michael Foster, *A Report of Some Proceedings on the Commission for the Trial of Rebels in the Year 1746, in County of Surry; and of Other Crown Cases: To Which Are Added Discourses upon a Few Branches of the Crown Law* 244 (2d ed. Corrected, London, W. Strahan & M. Woodfall 1776) (spelling modernized).

[13] The Fifth Amendment's protection against self-incrimination was a direct response to the historical experience of the Star Chamber and intended to prohibit judicial reliance upon statements extracted through unlawful cruelty or coercion, including torture. *See Michigan v. Tucker*, 417 U.S. 433, 440 (1974) ("The privilege against compulsory self-incrimination was developed by painful opposition to a course of ecclesiastical inquisitions and Star Chambers proceedings occurring several centuries ago."). Further, constitutional prohibitions against unreasonable searches and seizures, cruel and unusual punishments, and the guarantee of due process, reflect the Founders' antipathy to government cruelty and undue coercion within our Nation's justice system. *See, e.g., Gregg v. Georgia*, 428 U.S. 153, 169-170 (1976) ("The American draftsmen, who adopted the English phrasing in drafting the Eighth Amendment, were primarily concerned

14

torture during wartime and peacetime,[14] as well as the introduction of statements obtained through torture or other impermissible coercion against criminal defendants.[15] The government's apparent reliance upon information extracted using such tactics in the present case threatens the common law and constitutional prohibitions designed to protect individual liberty, to guard against tyranny, and to preserve the balance between the state and the individual that rests at the core of our Anglo-American legal traditions.

## Conclusion

For the reasons set forth above, Petitioner respectfully urges the Court to grant Petitioner's motion and issue an order declaring that the interrogation methods applied against him by U.S. personnel constitute torture and other forms of impermissible coercion.

---

. with proscribing 'tortures' and other 'barbarous' methods of punishment.") (citation omitted).

[14] *See* 18 U.S.C. § 2340. Further, in *Hamdan v. Rumsfeld*, 542 U.S. 507 (2006), the Supreme Court found that Common Article 3 of the 1949 Geneva Conventions is applicable to detainees in Guantanamo. Common Article 3 expressly prohibits "violence to life and person, in particular murder of all kinds, mutilation, cruel treatment and torture" against detainees in military custody at Guantanamo. *See also* MCA, Pub. L. No. 109-366, 120 Stat. 2600.

[15] *See, e.g., Brown v. Mississippi*, 297 U.S. 278 (1936).

Dated:  December 6, 2007                    Respectfully submitted,

Gitanjali S. Gutierrez [Bar No. 51177]

J. Wells Dixon [Bar No. 51138]
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6485
Fax: (212) 614-6499

Counsel for Petitioner

16

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2007, I caused the foregoing Petitioner's Motion to Declare Interrogation Methods Applied Against Petitioner Constitute Torture, with exhibits, to be filed and served on counsel listed below by causing an original and six copies to be delivered to the Court Security Office.

> Robert M. Loeb, Esq.
> U.S. Department of Justice
> Civil Division, Room 7268
> 950 Pennsylvania Ave., N.W.
> Washington, DC 20530-0001

Gitanjali S. Gutierrez