DEC-11-2007  16:14        US COURT OF APPEALS                    202 219 8530        P.002/003

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 07-1324                                        September Term, 2007

Majid Khan and Rabia Khan, as Next of Friend,
Petitioners

v.

Robert M. Gates, U.S. Secretary of Defense,
Respondent

Filed On:



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED    DEC 1 1 2007

CLERK

BEFORE:    Rogers, Garland, and Griffith, Circuit Judges

## ORDER

Upon consideration of the motion for leave to proceed in forma pauperis, the motion to exceed the page limits, and the motion for preservation of torture evidence, it is

ORDERED that the motion for leave to proceed in forma pauperis be granted.  It is

FURTHER ORDERED that the motion to exceed the page limits be granted.  It is

FURTHER ORDERED that respondent take all measures necessary to preserve the material described in the motion for preservation of torture evidence pending the remainder of briefing on that motion and further order of the court.  The purpose of this administrative order is to give the court sufficient opportunity to consider the merits of the motion for preservation and should not be construed in any way as a ruling on the merits of that motion.  Cf. D.C. Circuit Handbook of Practice and Internal Procedures 32 (2007).

Per Curiam

FOR THE COURT:
Mark J. Langer, Clerk

By:   _____
      Deputy Clerk/LD

[ORAL ARGUMENT NOT SCHEDULED]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| MAJID KHAN and RABIA KHAN, as Next Friend, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | No. 07-1324 |
| ROBERT M. GATES, Secretary of Defense, | ) ) ) | |
| Respondent. | ) ) ) | |

## OPPOSITION TO PETITIONER'S MOTIONS FOR PRESERVATION ORDER AND FOR DECLARATORY JUDGMENT

Respondent Secretary of Defense Robert M. Gates opposes petitioner's motions for a preservation order and a declaratory judgment. As we explain below, a preservation order is not appropriate here because petitioner cannot establish the requisite irreparable harm. The Government is committed to preserving the material at issue, and no court order is required. Petitioner's requested declaratory judgment should also be denied because it seeks relief beyond this Court's jurisdiction.[1]

---

[1] As this Court is aware, for the public version of petitioner's filings, certain material has been redacted by the Government. We wish to make clear that these redactions should not be understood to mean that the redacted material contains truthful claims. In order to protect national security sensitive information, the Government is neither confirming nor denying the correctness of any of petitioner's

## STATEMENT

Petitioner Majid Khan is being held as an enemy combatant at the U.S. Naval Base at Guantanamo Bay, Cuba. He is one of several "High Value Detainees" who were moved to Guantanamo Bay in September 2006, after previously being held in the custody of the Central Intelligence Agency.[2] A Department of Defense Combatant Status Review Tribunal ("CSRT") held a hearing on petitioner's status on April 15, 2007. Among the unclassified allegations against petitioner that were provided to him as part of his CSRT process are the following:

(1)  Petitioner's brother "stated [petitioner] was involved with a group that he believed to be al Qaida, and as of December 2002 was involved in transporting people across the border of Afghanistan and Pakistan, and points elsewhere";

(2)  Iyman Faris, who has pled guilty in the United States to providing material support to al Qaida, stated that petitioner had told him he met Khalid Shaykh Mohammed, referred to him as his uncle, and sought to "martyr himself against President Musharaff of Pakistan by detonating a vest of explosives inside a building";

---

many allegations. We have transmitted his allegations to the proper authorities within the Department of Justice for investigation.

[2] *See* http://www.whitehouse.gov/news/releases/2006/09/20060906-3.html (the President's announcement of the transfer of the high value detainees); http://www.defenselink.mil/pdf/detaineebiographies1.pdf (listing the detainees); http://www.defenselink.mil/pdf/thehighvaluedetaineeprogram2.pdf (a description of the high value detainee program).

(3)    Evidence submitted in the trial of Uzair Paracha in the Southern District
of New York showed that Paracha "agreed with two al Qaida members,
including [petitioner], to provide support to al Qaida by trying to help
[petitioner] obtain a travel document that would have allowed the
[petitioner] to re-enter the United States to commit a terrorist act";[3]

(4)    Agents found petitioner's "Bank of America visa check card * * * and
five different identification cards" for petitioner in Paracha's bedroom
in New York;

(5)    According to Paracha, petitioner tried to invest between $180,000 and
$200,000 of al Qaida money with him to be kept "liquid so they could
have it back at a moment's notice."

Khan, Majid, Unclassified Summary of Evidence at 1-2. The CSRT determined that

petitioner was properly classified as an enemy combatant. That decision became final

on July 2, 2007. Petitioner then filed this action under the Detainee Treatment Act

("DTA") to obtain review of that determination.

As part of this action brought under the DTA, petitioner has now broadly

requested that the Court order respondent to "preserve all documents and information

relating to [petitioner's] torture, cruel, inhuman, degrading treatment, and other

unlawful coercion" so that it may be "available for use in this DTA action and other

litigation or potential litigation involving Khan." Preservation Mot. at 8.

_____

[3] Paracha was convicted in federal court of five counts, including providing
material support to Al Qaeda. See "U.S. Convicts Pakistani of Providing Support to
al Qaeda," Office of the United States Attorney, Southern District of New York
(November 25, 2005) (http://www.usdoj.gov/usao/nys/pressreleases/November05/
parachaconvictionpr.pdf).

In a second motion, petitioner has asked that this Court enter a declaratory judgment that petitioner was subject to illegal coercion or torture.

## ARGUMENT

A preservation order would operate as an injunction, and petitioner must therefore demonstrate that four factors warrant this Court's issuance of an injunction: (1) irreparable injury, (2) substantial likelihood of success on the merits with respect to the requested relief, (3) lack of injury to other interested parties, and (4) furtherance of the public interest. *See Battayav v. Bush*, No. 05-CV-714 (RBW) (dkt no. 12); *Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc.*, Civ. No. 3-94-784, 1995 WL 783610, at *3-*4 (D. Minn. Oct. 20, 1995); *Humble Oil & Refining Co. v. Harang*, 262 F. Supp. 39, 42-43 (E.D. La. 1966); *see also Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 673-74 (D.C. Cir. 1985) (per curiam) (stay factors).

Petitioner urges this Court to employ a more relaxed standard (Mot. at 11), asking merely whether a preservation order "is necessary and not unduly burdensome." *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 137-38 (Fed. Cl. 2004). That standard, however, is inapplicable because it lacks "adequate precision" and "sufficient depth of analysis," and does not reflect the reality that a preservation order operates as the functional equivalent to an injunction. *See Capricorn Power Co. v. Siemens Westinghouse Power*, 220 F.R.D. 429, 434 n.2 (W.D. Pa. 2004).

-4-

Nonetheless, petitioner is not entitled to a preservation order in this DTA action under either standard.

1. a. Petitioner asserts that, in finding him to be an enemy combatant, the CSRT relied upon a record containing statements elicited from him during his CIA custody. Mot. at 11-12. He argues that, because the details of his treatment while in CIA detention will be critical to his ability to challenge the CSRT ruling, a preservation order is required.[4] Petitioner cannot, however, establish the requisite "irreparable injury" or need for a preservation order because the relevant agencies are taking concerted action and are firmly committed to retaining any evidence relating to the treatment of petitioner while in CIA custody. Notably, the Department of Defense has issued a broad directive instructing all of its components to preserve and

---

[4] We note that petitioner's premise is flawed. The CSRT record when produced to this Court will reveal that the CSRT was not presented with any statements made by petitioner, or any other detainee, while in CIA custody. *See* Declaration of Frank Sweigart (attached hereto as Exhibit A). The CSRT record does reference the conviction of Uzair Paracha on charges of providing material support to al Qaeda. The evidence in that criminal case showed that Paracha provided assistance to petitioner to help petitioner obtain travel documents so that he could enter the United States in order to commit terrorist acts. *See* CSRT Unclass. Record R-1. The CSRT expressly did not rely upon Paracha's conviction, but did give some weight to the testimony of Paracha in his criminal case. That testimony is part of the CSRT record. *Id.* at Enc. 1, p.6. We note that, in the Paracha criminal case, the parties stipulated that petitioner and another high-value detainee made certain statements and these stipulations were introduced into evidence by Paracha's defense counsel. Those stipulated statements (which can be read to support the facts that petitioner was a member of al Qaeda and was involved in planning terrorist attacks) were not presented to the CSRT, however.

maintain all information regarding all detainees ever held at Guantanamo. *See* Memorandum from Daniel J. Dell'Orto, Acting General Counsel (December 19, 2007) (attached hereto as Exhibit B) ("Specifically, you were directed to preserve and maintain 'all documents and recorded information of any kind (for example, electronic records, written records, telephone records, correspondence, computer records, e-mail, storage devices, handwritten or typed notes) that is in, or comes into, your possession or control' relating to these detainees. Those directives remain in effect and must continue to be followed. You are hereby directed that this requirement also applies to records relating to detainees who arrived at Guantanamo after August 2005 and to any detainees who may arrive at Guantanamo in the future."). Furthermore, in regard to the documents and other material at issue in petitioner's motion, the Director of the Central Intelligence Agency, General Michael V. Hayden, has signed a sworn declaration explaining that he has "issued an order to all CIA personnel to preserve and maintain all documents, information, and evidence relating to: A. any detainee held at the United States Naval Base Guantanamo Bay, Cuba; and B. any detainee held by the CIA." *See* Hayden Declaration (attached hereto as Exhibit C). The declaration explains that his "order is a continuing obligation that applies to future as well as past and present detainees." *Ibid.*

The CIA has disclosed that certain videotapes of two CIA detainees were destroyed in 2005. The destruction of those tapes is currently being investigated and, whatever the outcome of those investigations, the declaration of General Hayden and the Department of Defense directive show that the relevant government agencies are now firmly committed to preserving the existing records relating to CIA detention.

Further, as noted at the outset of this response, *supra*, p.1 n.1, the allegations made by petitioner in this case have been forwarded for investigation by appropriate law enforcement entities. Respondent would not compromise any potential investigation by destroying or sanctioning the destruction of documents pertinent to such investigation.

Petitioner argues that there is a "substantial risk * * * evidence will disappear" because the "government has failed to preserve the Government Information that is essential to this Court's review." Mot. at 12. This argument mixes apples and oranges. Contrary to petitioners' view, in *Bismullah v. Gates*, 501 F.3d 178, 192 (D.C. Cir. 2007) (*Bismullah I*), the Government never suggested that the Defense Department Office of Administrative Review of the Detention of Enemy Combatants ("OARDEC") lost or destroyed any evidence; instead, we explained that OARDEC did not retain a separate <u>compilation</u> of material that otherwise could be found — uncompiled – in other Government files. *See* McGarrah Decl. ¶ 16 (while there was

-7-

"no requirement * * * to compile a record of material comprising all files that would qualify as Government Information" OARDEC "made an effort to retain" a compilation).[5]

Moreover, the "failure" to retain a compilation of the "Government Information" in each case occurred before this Court ruled that the record on review consists of the Government Information. *Bismullah I*, 501 F.3d at 192. This Court has acknowledged that at that time the Government had "'no reason to believe that DoD would be required to produce'" the Government Information. *Bismullah v. Gates*, 503 F.3d 137, 141 (D.C. Cir. 2007) (*Bismullah II*). Going forward, the Government is well aware of the *Bismullah I* ruling and the need to preserve the record for this Court's review. There is accordingly no need for a separate injunctive order.[6]

---

[5] Petitioner's other criticisms of the CSRT process have nothing to do with the loss or destruction of evidence. *See* Mot. at 15 n.7 (criticizing CSRT recorder for not separating exculpatory from inculpatory evidence); Mot. at 15-16 (criticizing OARDEC for not collecting information when outside agencies declined to authorize its use or possession by OARDEC). The same is true of petitioner's criticism of military commission proceedings. *See* Mot. at 18 (alleging that military commission proceedings failed to obtain exculpatory material from other agencies); Mot. at 19 (Government tardy in turning over exculpatory evidence in military commission proceedings).

[6] *Hester v. Bayer Corp*, 206 F.R.D. 683, 685 (M.D. Ala. 2001) ("[t]o supplement every complaint with an order requiring compliance with the Rules of Civil Procedure would be a superfluous and wasteful task, and would likely create no more incentive upon the parties than already exists."); *Schnall v. Annuity & Life Re*

Petitioner's remaining arguments are a grab bag of assertions that material was lost or destroyed, but none of them is provided with sufficient context to understand whether they are accurate or whether the circumstances involved any obligation to retain the material that was lost. *See, e.g.,* Mot. at 19 (relying on press reports that detainee videotapes allegedly disappeared and evidence was mishandled). Indeed, some of these allegations involve the *discovery* of material rather than the destruction of it. *See* Mot. at 20-21 (tapes of interrogations made by CIA discovered and court notified).

At bottom, the material that is the subject of petitioner's motion is being preserved at the direction of the responsible agency officials. Under these circumstances, there is no likely "irreparable harm" to petitioner that could support an injunctive order mandating preservation.

b. Petitioner also states that evidence must be preserved for use in "any military commission proceedings involving [him]" or in "other litigation or possible litigation involving [him]." Mot. at 2, 8. In regard to military commissions, however,

---

*(Holdings) Ltd., XL,* No. 302-2133, 2004 WL 51117, *2 (D. Conn. Jan. 2, 2004). As the district court recognized in a Guantanamo habeas case, "[t]he Court is not predisposed to assume that the government would alter or destroy records in its possession absent a court order, and is therefore inclined to require that, at the very least, a party seeking a preservation order against the government make a credible showing of a significant risk of alteration or destruction." *Al-Anazi v. Bush,* 05-CV-0345 (JDB) (dkt. no. 35).

-9-

this Court's jurisdiction is limited to reviewing "final" decisions entered in a military commission proceeding. *See* 10 U.S.C. § 950j(b); DTA, § 1005(e)(3); MCA § 9. A "court is * * * without power to issue a [discovery order] when the underlying action is not even asserted to be within federal-court jurisdiction." *Houston Business Journal, Inc. v. Office of Comptroller of Currency*, 86 F.3d 1208, 1213 (D.C. Cir. 1996). Petitioner does not, and cannot, allege that there has been a final decision of a military commission against him, and in fact no military commission proceedings have been instituted against him. *See* http://www.defenselink.mil/news/ commissions.html (listing the current Commission cases). Accordingly, this Court lacks subject matter jurisdiction to issue a preservation order in regard to some possible future military commission proceeding or some other hypothetical federal court litigation. *See Houston Business Journal*, 86 F.3d at 1213 (federal rules of civil procedure "'grant[] a district court the power to issue subpoenas as to witnesses and documents, but the subpoena power of a court cannot be more extensive than its jurisdiction'"); *see also United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) (subpoena addressed to merits of dispute is void if court lacks subject matter jurisdiction). In this regard, this Court has previously held that it lacks jurisdiction to involve itself in military commission proceedings prior to a final commission judgment. *See Khadr v. Gates*, No. 07-1156

-10-

Order at 1 (May 30, 2007) (denying motion to stay Military Commission Act proceedings because "[t]his court is without jurisdiction to grant the requested relief" under 10 U.S.C. § 950j(b)). Likewise, there is no jurisdiction over petitioner's motion to the extent he relies upon some possible future military commission proceeding. In any event, the requested relief is not warranted for the reasons set forth above.

2. Petitioner's second motion – seeking a declaratory judgment that petitioner was subjected to torture and unlawful coercion – should also be denied because the DTA does not confer jurisdiction to issue such a declaratory judgment and the MCA precludes exercise of any such jurisdiction. *See* MCA § 7. Instead, this Court's authority is limited by statute to "jurisdiction to determine the validity of any final decision of a [CSRT]." DTA § 1005(e)(2).

The CSRT had a responsibility in petitioner's case to address "whether any statement derived from or relating to such detainee was obtained as a result of coercion," DTA § 1005(b)(1)(A); see 2006 CSRT Procedures, enc. 10, § B (implementing requirement to consider "whether any statement derived from or relating to such detainee was obtained as a result of coercion"). In turn, this Court would be obliged to review any such determination. Accordingly, if the record includes "statement[s] derived from or relating to [the] detainee," this Court will be

-11-

charged with evaluating whether the CSRT properly implemented this DTA requirement to consider whether such statements were "obtained as a result of coercion," and, if so, to assess the "probative value (if any) of any such statement[s]." DTA § 1005(b)(1); *see* DTA § 1005(e)(2)(C) (authorizing this Court to review whether status determination "was consistent with the [CSRT] standards and procedures" and whether the standards are "consistent with the * * * laws of the United States").

However, even if such an evaluation is called for, it would not be appropriate to issue the declaratory judgment sought by petitioner. Instead, this Court would review whether the CSRT properly evaluated the issue of coercion based upon the CSRT record. If the record or CSRT decision is not deemed adequate in this regard, this Court would not issue a freestanding declaratory judgment concerning the conditions of petitioner's treatment, but would instead (assuming the error is not harmless) remand the CSRT determination to the Defense Department for appropriate action.

## CONCLUSION

For the foregoing reasons, petitioner's motions should be denied.

Respectfully submitted,

JEFFERY BUCHOLTZ
*Acting Assistant Attorney General*

DOUGLAS N. LETTER
*Terrorism Litigation Counsel*

ROBERT M. LOEB
(202) 514-4332

AUGUST E. FLENTJE
(202) 514-3309
*Attorneys, Appellate Staff*
*Civil Division, Room 7268*
*U.S. Department of Justice*
*950 Pennsylvania Avenue, N.W.*
*Washington, D.C.  20530*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2007, I served the foregoing "OPPOSITION TO MOTIONS FOR PRESERVATION ORDER AND FOR DECLARATORY JUDGMENT" upon counsel of record by e-mail and by causing copies to be sent by regular mail to:

> J. Wells Dixon
> Gitanjali S. Gutierrez
> Center for Constitutional Rights
> 666 Broadway, 7th Floor
> New York, NY 10012

_____
August E. Flentje

# ADDENDUM

Exhibit A

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| MAJID KHAN, | ) |
| | ) |
| *Petitioner,* | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| ROBERT M. GATES, | ) |
| | ) |
| *Respondent.* | ) |

07-1324

DECLARATION OF
FRANK SWEIGART

Pursuant to 28 U.S.C. §1746, I, Frank Sweigart, declare as follows:

1.  I am the Director of the Office for the Administrative Review of the Detention of Enemy Combatants (OARDEC). I have served in this position since March 17, 2006. Prior to that time, I served as the Deputy Director of the same organization, beginning in June 2004. As the Director of OARDEC, I supervise all aspects of its mission, which includes conducting Combatant Status Review Tribunals (CSRTs) for individuals detained by the Department of Defense at Guantanamo Bay, Cuba. The statements in this declaration are based upon my personal knowledge and information obtained by me in the course of my official duties.

2.  I am familiar with the CSRT that was conducted for Majid Khan and that determined he is an enemy combatant. I reviewed his CSRT as part of my official duties as Tribunal Convening Authority, which included preparing the CSRT record for forwarding to the Deputy Secretary of Defense in his role as the final review authority of this CSRT.

3.  No statements made by Majid Khan while in CIA custody were reviewed or considered by the CSRT or included in the administrative Record of Proceedings (per CSRT Procedures, Enc. 2, § C(8)) . Similarly, no statements made by any other individual while in

1

CIA custody were reviewed or considered by the CSRT or included in the administrative Record of Proceedings (per CSRT Procedures, Enc. 2, § C(8)).

December 20, 2007

2

Exhibit B



**DEPARTMENT OF DEFENSE**
**OFFICE OF GENERAL COUNSEL**
1600 DEFENSE PENTAGON
WASHINGTON DC 20301-1600

DEC 1 9 2007

MEMORANDUM FOR SECRETARY OF DEFENSE
    DEPUTY SECRETARY OF DEFENSE
    SECRETARIES OF THE MILITARY DEPARTMENTS
    CHAIRMAN OF THE JOINT CHIEFS OF STAFF
    UNDER SECRETARIES OF DEFENSE
    DIRECTOR, OPERATIONAL TEST AND EVALUATION
    INSPECTOR GENERAL OF THE DEPARTMENT OF DEFENSE
    ASSISTANTS TO THE SECRETARY OF DEFENSE
    DIRECTOR, ADMINISTATION AND MANAGEMENT
    DIRECTOR, PROGRAM ANALYSIS AND EVALUATION
    DIRECTOR, NET ASSESSMENT
    DIRECTOR, FORCE TRANSFORMATION
    DIRECTORS OF THE DEFENSE AGENCIES
    DIRECTORS OF THE DOD FIELD ACTIVITIES

SUBJECT: Preservation of Detainee Records

    In August 2005, in response to several orders issued by federal court judges, the General Counsel of the Department of Defense directed that certain information relating to all detainees ever held by the Department of Defense at Guantanamo Bay be preserved and maintained (enclosure). Specifically, you were directed to preserve and maintain "all documents and recorded information of any kind (for example, electronic records, written records, telephone records, correspondence, computer records, e-mail, storage devices, handwritten or typed notes) that is in, or comes into, your possession or control" relating to these detainees. Those directives remain in effect and must continue to be followed.

    You are hereby directed that this requirement also applies to records relating to detainees who arrived at Guantanamo after August 2005 and to any detainees who may arrive at Guantanamo in the future.

                                           *Daniel J. Dell'Orto*

                                      Daniel J. Dell'Orto
                                      Acting General Counsel

Enclosure
As stated



Exhibit C

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

MAJID KHAN and RUBIA KHAN,  )
  as next friend,           )
                            )
        Petitioners,        )
                            )
    v.                      )   No. 07-1324
                            )
ROBERT M. GATES,            )
  Secretary of Defense,     )
                            )
        Respondent.         )
_____)

### DECLARATION OF GENERAL MICHAEL V. HAYDEN, USAF, DIRECTOR, CENTRAL INTELLIGENCE AGENCY

I, MICHAEL V. HAYDEN, hereby declare and state:

1.  I am the Director of the Central Intelligence Agency
(CIA) and have served in this capacity since 30 May 2006.  In my
capacity as Director, I lead the CIA and manage the Intelligence
Community's human intelligence and open source collection
programs on behalf of the Director of National Intelligence
(DNI).  I have held a number of positions in the Intelligence
Community, including Principal Deputy Director of National
Intelligence, from April 2005 to May 2006; Director, National
Security Agency/Chief, Central Security Service (NSA/CSS), Fort
George G. Meade, Maryland, from March 1999 to April 2005;
Commander of the Air Intelligence Agency and Director of the
Joint Command and Control Warfare Center, both headquartered at

Kelly Air Force Base, Texas, from January 1996 to September 1997; and Director, Intelligence Directorate, U.S. European Command, Stuttgart, Germany, from May 1993 to October 1995.

2.   I am a four-star general in the United States Air Force and have held senior staff positions at the Pentagon, the National Security Council, and the U.S. Embassy in Sofia, Bulgaria, as well as serving as Deputy Chief of Staff for United Nations Command and U.S. Forces Korea.  I entered active duty in 1969 as a distinguished graduate of the Reserve Officer Training Corps program.

3.   I make the following statements based upon my personal knowledge and information provided to me in my official capacity.

4.   In light of recent events surrounding the destruction of recordings of the interrogations of detainees formerly in the custody of the CIA, I have issued an order to all CIA personnel to preserve and maintain all documents, information, and evidence relating to:

      A.   any detainee held at the United States Naval Base Guantanamo Bay, Cuba; and

      B.   any detainee held by the CIA.

This order is a continuing obligation that applies to future as well as past and present detainees.

\*   \*   \*   \*

2

DEC. 20. 2007  3:27PM
NO. 2492   P. 4

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of December, 2007.

General Michael V. Hayden, USAF
Director
Central Intelligence Agency

3

**UNCLASSIFIED**

FILED WITH THE
COURT SECURITY OFFICER
CSD:
DATE:

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

```
                                    x
                                    :
MAJID KHAN,                         :
                                    :
                Petitioner,         :
                                    :
        v.                          :    No. 07-1324
                                    :
ROBERT M. GATES,                    :
                                    :
                Respondent.         :
                                    :
                                    x
```

### REPLY MEMORANDUM OF LAW IN FURTHER
### SUPPORT OF PETITIONER'S TORTURE MOTIONS

CENTER FOR CONSTITUTIONAL RIGHTS
J. Wells Dixon
Gitanjali S. Gutierrez
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6423
Fax: (212) 614-6499

Counsel for Petitioner

**UNCLASSIFIED**

**UNCLASSIFIED**

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

```
-----------------------------------x
                                    :
MAJID KHAN,                         :
                                    :
              Petitioner,           :
                                    :
        v.                          :   No. 07-1324
                                    :
ROBERT M. GATES,                    :
                                    :
              Respondent.           :
                                    :
-----------------------------------x
```

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF PETITIONER'S TORTURE MOTIONS**

Petitioner Majid Khan, by and through his undersigned counsel, respectfully submits this combined reply memorandum of law in further support of his motion for an order requiring the government to preserve all evidence relating to his torture, and his motion to declare that the interrogation methods inflicted on him constitute torture. Khan's motions should be granted.

**I.    CIA DESTRUCTION OF VIDEOTAPES OF WATERBOARDING
CONFIRMS THE NEED FOR A PRESERVATION ORDER**

In his preservation motion, Khan argues that he was subjected to a ruthless program of state-sanctioned torture. He also argues that a preservation order is required to ensure that documents and information relating to his torture and other

**UNCLASSIFIED**

## UNCLASSIFIED

unlawful coercion are not lost or destroyed, and are available for use in this action and other litigation or potential litigation involving him.

Respondent does not seriously dispute that Khan was tortured, or that the failure to preserve evidence of his torture would substantially impair the Court's ability to determine whether he is properly detained as an "enemy combatant."[1] Nor does Respondent seriously contest the Court's power to order preservation.[2] Respondent instead opposes Khan's motion on the ground that a preservation order is unnecessary because the relevant government agencies are "taking concerted action and are firmly committed to retaining any evidence relating to the treatment of [Khan] while in CIA custody." Opp'n at 5.[3] Respondent further contends that the government "would not compromise any potential investigation by destroying

---

[1] Respondent states that the redactions to the public version of Khan's preservation motion "should not be understood to mean that the redacted material contains truthful claims," *see* Opp'n at 1 n.1, but does not dispute those claims.

[2] Respondent contends that the Court may not issue a preservation order in regard to any future commission proceedings because its jurisdiction is limited to reviewing "final" decisions entered in a military commission proceeding. *See* Opp'n at 10. Even if that were true, which Khan disputes, Respondent misconstrues his preservation argument with respect to the commissions – *i.e.*, that the Court's ability to review *any* commission decisions involving Khan would be substantially impaired by a failure to preserve evidence of his torture.

[3] Respondent argues that Khan has failed to satisfy the "irreparable harm" requirement for a preliminary injunction. *See* Opp'n at 5. But a preservation order is not a preliminary injunction, and, in any event, that standard is satisfied here. *See* Preservation Mot. at 11 & n.3.

## UNCLASSIFIED

P. 04

**UNCLASSIFIED**

or sanctioning the destruction of documents." *Id.* at 7. According to Respondent, the Court should not issue a preservation order because "the material that is the subject of petitioner's motion is being preserved at the direction of the responsible agency officials." *Id.* at 9.

Respondent essentially argues that a preservation order is not necessary or appropriate because the CIA and other government agencies are "now firmly committed to preserving the existing records relating to CIA destruction." *Id.* at 7. Respondent thus appears to suggest that even though government officials may have previously lost, destroyed or suppressed evidence that they were required to preserve,[4] there is no risk that the government will continue to do so in the absence of a Court order. That argument strains credulity and should be rejected.

As an initial matter, the Court has already ordered the government preserve evidence relating to Khan. On December 11, 2007, the Court issued an interim order, *sua sponte*, requiring the government to take "all measures necessary to preserve the material described in [Khan's] motion for preservation of torture

---

[4] Respondent's suggestion that the many examples of spoliation set forth in Khan's motion lack "sufficient context" is meritless. *See* Opp'n at 9. Respondent also continues to argue that the government had no obligation to retain a compilation of the Government Information in Khan's case because it had no reason to believe that it would be required to produce that information as part of the record on review. *See* Opp'n at 8. But, again, Respondent overlooks the critical fact that Khan's CSRT was conducted in April 2007, *after* the scope of the record on review had been fully briefed by the parties in *Bismullah*.

**UNCLASSIFIED**

3

**UNCLASSIFIED**

evidence pending the remainder of briefing on that motion and further order of the court." Although the Court stated that the order "should not be construed in any way as a ruling on the merits of the preservation motion," it effectively granted the relief sought by Khan's preservation motion. Respondent does not contend that a continuing or further preservation order would impose any additional burden on the government. Nor does Respondent provide any other basis for the Court to withdraw the preservation requirement.

Khan has shown a manifest need for a Court order requiring preservation of evidence relating to his torture and other unlawful coercion. As set forth in his opening brief, in the context of "enemy combatant" litigation, and particularly with respect to former CIA detainees, the government is simply no longer entitled to a presumption of regularity when discharging its existing preservation obligations. The government has repeatedly provided assurances that it would comply with its existing preservation obligations without the need for judicial intervention, *see* Preservation Mot. at 9, but those assurances have proven unreliable.

The Court need only consider the recent disclosures that CIA officials destroyed videotapes of prisoners Abu Zubaydah and Al Nashiri ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to conclude there is a continuing, substantial risk of spoliation in this case. The tapes were destroyed in open defiance of existing court orders to preserve and produce such evidence.

**UNCLASSIFIED**

4

P. 06

## UNCLASSIFIED

Indeed, they were destroyed for the express purpose of avoiding judicial scrutiny and likely criminal liability for torture after the existence of the CIA "black sites" was publicly disclosed on November 2, 2005.[5]  Simply stated, these disclosures establish beyond doubt that the CIA cannot be presumed to act lawfully or in good faith with respect to its preservation obligations.[6]

Notably, on December 6, 2007, General Michael Hayden, Director of the Central Intelligence Agency, publicly acknowledged the destruction of the tapes and stated in part that videotaping of interrogations "stopped in 2002." Statement to Employees by Director of the Central Intelligence Agency, General Michael Hayden, on the Taping of Early Detainee Interrogations (Dec. 6, 2007), *available at* http://www.cia.gov/news-information/press-releases-statements/ taping-of-early-detainee-interrogations.html.  That statement was demonstrably incorrect.

---

[5]  *See, e.g.,* Mark Mazzetti, *C.I.A. Admits It Destroyed Tapes of Harsh Interrogations,* N.Y. Times, Dec. 6, 2007; Dan Eggen & Joby Warrick, *CIA Destroyed Videos Showing Interrogations,* Wash. Post, Dec. 7, 2007, at A1; Dan Eggen & Walter Pincus, *FBI, CIA Debate Significance of Terror Suspect,* Wash. Post, Dec. 18, 2007, at A1; Michael Abramowitz & Joby Warrick, *White House Lawyers Told of Videotapes,* Wash. Post, Dec. 20, 2007, at A3; Greg Miller, *Wagons Circled at CIA Over Tapes' Demise,* LA Times, Dec. 24, 2007.

[6]  Although the Justice Department recently began a criminal investigation into the CIA's destruction of interrogation tapes, that inquiry does not conflict with the relief Khan seeks here.  Khan does not ask the Court at this time to investigate the possible destruction of evidence in his case; he merely seeks preservation.

## UNCLASSIFIED

5

**UNCLASSIFIED**

Moreover, in response to the publicly filed version of Khan's preservation motion and the recent disclosures about the tape destruction, other unnamed intelligence officials have made a series of false statements about Khan's imprisonment and torture in CIA custody. For instance, officials have said that his interrogations were not videotaped; that all videotaping stopped in 2002; and that enhanced interrogation techniques were used on only a small number of prisoners. *See* William Glabserson, *Man Held by C.I.A. Says He Was Tortured*, N.Y. Times, Dec. 8, 2007 ("An intelligence official speaking on the condition of anonymity said the C.I.A.'s interrogations of Mr. Khan were not videotaped."); Josh White, *Justice, CIA Begin Videotape Inquiry*, Wash. Post, Dec. 9, 2007, at A4 ("An intelligence official said yesterday that after 2002, the CIA did not produce interrogation videotapes similar to the ones destroyed."); Michael Melia, *Attorneys for Gitmo Terror Suspect Say He Was Tortured in CIA Custody*, Assoc. Press, Dec. 8, 2007 ("special methods of questioning" used on small number of suspects).

As set forth in the Gutierrez Declaration,



**UNCLASSIFIED**

UNCLASSIFIED



*See, e.g.*, Dixon Decl., Ex. C at 15 (unclassified Human Rights Watch report describing CIA imprisonment of Marwan Jabour, including videotaping in 2004).

Against this backdrop, Respondent's assurances that the CIA and other government agencies have undertaken sufficient actions ensure preservation of evidence relating to Khan are unavailing.[7] To the contrary, inaccuracies in public

---

[7] Respondent's reliance on the declarations of General Hayden and Acting Defense Department General Counsel Daniel Dell'Orto is also misplaced. *See* Opp'n at 5-6 & Exs. B & C. Those declarations do not preclude the Court from continuing to require preservation. They merely indicate that the CIA and Defense Department have taken steps to preserve evidence relating to CIA prisoners. If that is correct and the government is preserving evidence of Khan's torture, then the government would suffer no harm from Court-ordered preservation.

It is also important to note that according to the Dell'Orto Declaration, the Defense Department General Counsel issued a directive in August 2005 requiring preservation of "certain evidence" relating to "all detainees ever held by the

UNCLASSIFIED

statements by senior intelligence officials about the tape destruction, and false statements about Khan's experience in CIA custody, raise substantial concern that torture evidence in this case may be lost or destroyed absent a Court order.

At a minimum, recent disclosures about the destruction and suppression of evidence illustrate that the CIA Torture Program is classified at such a high level of government and is so compartmented as to make it virtually impossible for CIA officials – even the CIA Director – to ensure that all relevant evidence is adequately preserved. *See, e.g.*, Preservation Mot., Ex. 9 (Justice Department letter describing "errors" in CIA declarations resulting from reliance on "assurances of the component of the CIA [redacted] unknowing that a different component of the CIA had contact with [redacted]") (redactions in original exhibit). A Court order is thus required to reemphasize that Respondent needs to take extraordinary precautions to prevent the purposeful or inadvertent loss, destruction or suppression of evidence here.[8]

---

Defense Department at Guantanamo Bay." As set forth in the Dixon Declaration, ¶ 108, ███████████████████████ but the directive did not prevent the subsequent destruction of videotapes of their interrogations in November 2005. Thus, if anything, this declaration suggests that the Defense Department's internal preservation efforts are insufficient to prevent spoliation.

[8] The Court should also specify that its preservation order extends to "black sites" overseas, where interrogation tapes were held (and destroyed). *See* Mark Mazzetti, *C.I.A. Was Urged to Keep Interrogation Videotapes*, N.Y. Times, Dec. 8, 2007.

UNCLASSIFIED

UNCLASSIFIED

## II. THE COURT SHOULD DECLARE ▬▬▬▬ ILLEGAL SO THESE PROCEEDINGS ARE NOT TAINTED BY TORTURE

Respondent opposes Khan's motion to declare that the interrogation methods inflicted on him constitute torture on the ground that the Court does not have jurisdiction under the Detainee Treatment Act to issue such a declaration. *See* Opp'n at 11.[9] Respondent argues that the Court's jurisdiction is limited to determining whether Khan's CSRT properly evaluated whether statements derived from or relating to him were obtained by coercion, and, if so, whether those statements have probative value. *See id.* at 11-12. Respondent further contends that even if the Court were to determine that Khan's CSRT was "inadequate" in this regard, it would not be appropriate for the Court to issue a declaratory judgment because the only possible remedy would be for the Court to remand the case for another CSRT hearing. *Id.* at 12. Respondent is wrong.[10]

As set forth in Khan's declaration motion, the Court has the power to order the requested relief under the DTA. While the scope of judicial review available under the DTA may be unsettled, even under the narrowest reading of the statute there is no question that, as Respondent concedes, the Court has the power to

---

[9] Respondent also baldly states that the Military Commissions Act "precludes the exercise of any such jurisdiction." Opp'n at 11. Respondent is incorrect.

[10] Respondent's claim that the Court has no power to inquire into Khan's torture confirms the constitutional inadequacy of CSRT review under the DTA.

UNCLASSIFIED

UNCLASSIFIED

determine whether Khan's CSRT properly relied on evidence obtained by torture or other unlawful coercion, and, if so, whether it correctly determined that such evidence is unreliable. That is precisely the inquiry that Khan seeks here. In addition, the Court has the power to issue declarations concerning such matters within its jurisdiction under the All Writs Act, 28 U.S.C. § 1651, and the Declaratory Judgment Act, 28 U.S.C. § 2201. *See* Mot. to Declare at 12-13. Moreover, the Court has inherent power to inquire into claims of torture, where, as here, those claims may taint and degrade its judicial proceedings.

As indicated above, Respondent does not seriously dispute that Khan was tortured. Nor can there be any serious dispute that the torture he endured violates the Constitution and laws of the United States. It is equally clear that Khan's CSRT was presented with and considered evidence of torture or evidence potentially derived from torture. *See* Mot. to Declare at 5 & n.4, 11-12 & n.6.



UNCLASSIFIED

UNCLASSIFIED

As indicated by Khan's personal account how the torture impacted him, attached hereto as Ex. 1, he is unlikely ever to recover fully



UNCLASSIFIED



As described in his opening brief and the Gutierrez Declaration, Khan experienced



---

[12] Also attached hereto are two letters that Khan wrote to the Court concerning his torture motions. *See* Exs. 3 & 4.

UNCLASSIFIED

P. 13

UNCLASSIFIED

Unfortunately,

*See* Darius Rejali, *Torture,*

UNCLASSIFIED

UNCLASSIFIED

*American Style*, Boston Globe, Dec. 16, 2007. To the contrary, such torture is now favored by democracies like the United States because it purportedly "leaves no marks"; and if prisoners are unable to show any physical marks of torture, the public is less likely to believe that the torture occurred. "[A]s societies have become more open, the art of torture has crept underground and evolved into the chilling new forms – often undetectable – that define torture today." *Id.*

That waterboarding or other "evolved" forms of torture purportedly leave no physical scarring does not mean that they are legal. *See Williams v. Boles*, 841 F.2d 181, 183 (7th Cir. 1988) (Easterbrook, J.) ("Many things – beatings with a rubber truncheon, water torture, electric shock, incessant noise, reruns of 'Space 1999' – may cause agony as they occur yet leave no enduring injury. The state is not free to inflict such pains without cause just so long as it is careful to leave no marks."); *Powers v. Snyder*, 484 F.3d 929, 932 (7th Cir. 2007) (Posner, J.) (same); *see also Arizona v. Fulminante*, 499 U.S. 279, 287 (1991) ("[T]he blood of the accused is not the only hallmark of an unconstitutional inquisition.") (internal quotation marks and alterations omitted); *cf. Hudson v. McMillan*, 503 U.S. 1, 13-14 (Blackmun, J., concurring) ("state-sponsored torture and abuse" may include "asphyxiating [prisoners] short of death"); *id.* at 26 (Thomas, J., dissenting) ("'Diabolic or inhuman' punishments *by definition* inflict serious injury. That is not to say that the injury must be, or always will be, *physical*. 'Many things

14 UNCLASSIFIED

**UNCLASSIFIED**

[including] water torture . . . may cause agony as they occur yet leave no enduring injury.'") (emphasis in original) (quoting *Boles*).

There can also be no question that confessions and other evidence obtained ████████████████████████████████████████ are inherently unreliable. *See Jackson v. Denno*, 378 U.S. 368, 385-6 (1964); *Miller v. Fenton*, 474 U.S. 104, 109 (1985); *Rochin v. California*, 342 U.S. 165, 173-74 (1951); *see also generally* Jonathan Hafetz, *Torture, Judicial Review, and the Regulation of Custodial Interrogations*, 62 NYU Ann. Surv. of Am. L. 433 (2007).

Accordingly, under no circumstances could Khan's CSRT have properly considered evidence obtained, directly or indirectly, from his torture or the torture of other CIA prisoners. The CSRT could not have properly concluded that such evidence is reliable or "probative." Respondent's further claim that Khan's CSRT panel was "not presented with any statements made by petitioner, or any other defendant, while in CIA custody," *see* Opp'n at 5 n.4, should also be rejected.

As an initial matter, Respondent's argument in this regard should be given no weight because the government has refused to produce the entire record on review in this case. The government instead has arrogated to itself discretion to produce only selected portions of the CSRT record — not the Government Information, as required by the Court's decisions in *Bismullah* — in support of its opposition to Khan's motions. On December 18, 2007, Respondent provided Khan

**UNCLASSIFIED**

UNCLASSIFIED

with a certified index to the CSRT record, and certain selected documents from that record. Respondent did not produce all of the items listed on the index, however, including the documents most likely relevant to the Court's resolution of the instant motions – the CSRT decision report, the classified summary of evidence, and a document entitled "Compliance with DTA" – each of which appears to address Khan's torture. *See* Certified Index to the Record (attached hereto as Ex. 5) (items #7, 9, 36). Respondent did not even produce all of the *unclassified* documents. *See id.* (Items #17-20). Thus, it is impossible to consider Respondent's argument fully or adequately without the benefit of the full record.

Nonetheless, as indicated above, Khan's CSRT panel plainly considered the two statements he made about his torture during the CSRT. Khan also noted during his CSRT that these statements about his torture relate directly to the allegations presented against him:

> If you don't want to hear the entire report, then at least allow me to present you the summary of this report which is very short and to the point. This report is directly related to the Summary of Evidence due to the Summary of Evidence coming from a combination of both classified and unclassified sources.

Preservation Mot., Ex. 3 (redacted CSRT transcript). The Unclassified Summary of Basis for Tribunal Decision further shows that the CSRT panel considered Khan's torture statements:

> The Detainee made statements during the hearing and provided written allegations of abuse while in detention. . . . Other exhibits also

16  UNCLASSIFIED

UNCLASSIFIED

> contained information that alleged others may have provided
> statements about the Detainee which were obtained as a result of
> coercion. . . . In determining the Detainee's enemy combatant status,
> the Tribunal carefully considered these allegations with respect to all
> exhibits provided. Enclosure 6 [the "Compliance with DTA"
> document] provides additional information regarding Detainee
> Treatment Act matters.

Ex. 6, at 8-9 (attached hereto).

Moreover, because evidence of Khan's torture is necessarily exculpatory, the

CSRT rules required the panel to consider that evidence separately. The CSRT

panel was also required to consider the effects of Khan's torture in determining

whether he was mentally competent to participate in his CSRT. *See id.* at 8

(unclassified decision).

Even if the CSRT rules did not expressly require consideration of Khan's

torture, such an inquiry would be required by other international law obligations

incorporated in the CSRT process. In particular, for example, Article 15 of the

Convention Against Torture requires that "[e]ach State Party shall ensure that any

statement which is established to have been made as a result of torture shall not be

invoked as evidence in any proceedings, except against a person accused of torture

as evidence that the statements were made." Convention Against Torture and

Other Cruel, Inhuman or Degrading Treatment or Punishment, Apr. 18, 1988, Sen.

Exec. Rpt. 101-30, 1465 U.N.T.S. 85 (ratified Oct. 21, 1994). That provision is

incorporated in the CSRT process and the DTA review process. *See* U.S. Dep't of

UNCLASSIFIED

UNCLASSIFIED

State, Legal Advisor John B. Bellinger III., U.S. Delegation Oral Responses to Article 15 Committee Questions, Geneva, Switzerland (Question 42) (May 5, 2006). Common Article 3 of the Geneva Conventions, which applies to Guantánamo prisoners, *see Hamdan v. Rumsfeld*, 126 S. Ct. 2749 (2006), also contains similar provisions prohibiting torture and appearance before regularly constituted courts. In addition, because Khan's CSRT was not the equivalent of an Article 5 hearing and he is therefore presumptively entitled to prisoner-of-war status, *see* Ruling on Defense Motion for Article 5 Status Determination at 3, *United States v. Hamdan*, Office of Military Commissions (Dec. 17, 2007), inquiry must be made to ensure that he was and is protected from torture during his detention. *See, e.g.*, Army Reg. 190-8, §§ 1-5, 1-6 (1997).

The Court also has inherent power to inquire into the nature and legality of Khan's treatment in CIA custody because his torture was so severe as to "shock the conscience," perhaps requiring dismissal of any actions against him. *See United States v. Russell*, 411 U.S. 423, 431-32 (1973); *Harbury v. Deutch*, 233 F.3d 596, 602 (D.C. Cir. 2000). The Court also has inherent power to inquire into Khan's torture because it threatens to taint and degrade these judicial proceedings. *See Miller*, 474 U.S. at 109 ("[C]ertain interrogation techniques . . . are so offensive to a civilized system of justice that they must be condemned."); *Brown v. Mississippi*, 297 U.S. 278, 286 (1936) (torture is "revolting to the sense of justice"); *Rochin*,

8    UNCLASSIFIED

UNCLASSIFIED

342 U.S. at 173-74) ("[T]o sanction [such] brutal conduct . . . would be to afford brutality the cloak of law. Nothing would be more calculated to discredit law and thereby to brutalize the temper of a society."); *United States v. Abu Ali*, 395 F. Supp. 2d 338, 379 (E.D. Va. 2005) ("[T]orture of any kind is legally and morally unacceptable, and the judicial system of the United States will not permit the taint of torture in its judicial proceedings."); *see also Rogers v. Richmond*, 365 U.S. 534, 540-41 (1961) ("ours is an accusatorial and not an inquisitorial system").

In the end, Respondent's opposition to Khan's declaration motion appears to have less to do with the proper exercise of the Court's jurisdiction than it does with an unwillingness to acknowledge that Khan was tortured. But that concern provides no basis for the Court to deny Khan's motion. To the contrary, those officials in the Executive Branch who authorized and carried out the secret CIA detention and interrogation program – and those members of Congress who acquiesced in state-sanctioned torture with little or no protest – have done far greater harm to our nation than any of the unproven allegations against Majid Khan. *See Spano v. New York*, 360 U.S. 315, 320-21 (1959) ("life and liberty can be as much endangered from illegal methods used to convict" as from allegations of criminal conduct). Those government officials who cannot declare, even now, that the interrogation methods inflicted on Khan and others ghost prisoners constitute torture likewise threaten to degrade the solemnity of the high offices

UNCLASSIFIED    19



UNCLASSIFIED

they hold. Indeed, it is a dark day when a brigadier general in the United States Military cannot say with certainty that the waterboarding of an American soldier by a rogue nation would be unlawful. *See* Josh White, *Evidence From Waterboarding Could Be Used in Military Trials*, Wash. Post, Dec. 12, 2007, at A4.

Accordingly, the Court should exercise its jurisdiction to declare that Majid Khan was tortured, and thereby affirm our adherence to the rule of law. The Court should do so now so that the filth and stench of Khan's torture do not linger in these judicial proceedings.

### Conclusion

For all of the foregoing reasons, and for the reasons set forth in his opening papers, Khan's motions should be granted.

Dated:    Washington, DC
          January 4, 2008

Respectfully submitted,

Counsel for Petitioner:

J. Wells Dixon [Bar No. 51138]
Gitanjali S. Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6423
Fax: (212) 614-6499



## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2008, I caused the foregoing Reply Memorandum of Law in Further Support of Petitioner's Torture Motions, with exhibits, to be filed and served on counsel listed below by causing an original and six copies to be personally delivered to the Court Security Office.

Robert M. Loeb, Esq.
U.S. Department of Justice
Civil Division, Room 7268
950 Pennsylvania Ave., N.W.
Washington, DC 20530-0001

Counsel for Respondent

_____
J. Wells Dixon

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 07-1324                                    September Term, 2007

Filed On:

Majid Khan and Rabia Khan, as Next of Friend,
    Petitioners

    v.

Robert M. Gates, U.S. Secretary of Defense,
    Respondent



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT

FILED   FEB 14 2008

CLERK

**BEFORE:**   Randolph, Tatel, and Garland, Circuit Judges

## O R D E R

    Upon consideration of the motion for preservation of torture evidence, the motion to declare interrogation methods applied against petitioner constitute torture, the opposition to both motions, the reply, and the letter submitted pursuant to Federal Rule of Appellate Procedure 28(j); and the motion to designate as "protected information" unclassified information in record on review, the opposition thereto, and the reply, it is

    **ORDERED** that the motion for preservation of torture evidence and the motion to declare interrogation methods applied against petitioner constitute torture be referred to the merits panel to which this case is assigned.  It is

    **FURTHER ORDERED** that consideration of the motion to designate as "protected information" be deferred pending further order of the court.  The parties are directed to file motions to govern further proceedings with respect to that motion within 14 days of this court's resolution of the motion to designate as "protected information" filed in No. 06-1397, <u>Parhat v. Gates</u>.

    The court's interim orders filed October 3, 2007, and December 11, 2007, remain in effect pending further order of the court.

### Per Curiam

FOR THE COURT:
Mark J. Langer, Clerk

BY:                            
Deputy Clerk/LD